In the Matter of the Arbitration between PPX ENTERPRISES, INC., Appellant, and SCEPTER RECORDS, INC., Respondent.

First Department, March 23, 1976

*Morton L. Ginsberg* for appellant.

*E. David Irwin* of counsel *(Martin Itzler, P.C.,* attorney), for respondent.

STEVENS, P.J. Petitioner, PPX Enterprises, Inc. (PPX), appeals from an order and judgment (one paper) entered August 21, 1975 in the Supreme Court, New York County, (KORN, J.), which denied its application to vacate an arbitration award dated February 14, 1974 and granted the cross motion of respondent, Scepter Records, Inc. (Scepter), to confirm the award.

On July 16, 1971, the parties entered into a written agreement whereby PPX was to be the sole representative of Scepter for its entire catalogue throughout the world with stated countries excluded. In the event PPX did not earn $250,000 in the period July 16, 1971 through October 16, 1972, Scepter was given the option of withdrawing its catalogue and canceling the contract. The contract also contained a provision that unearned royalties should be put in escrow.

In September, 1971, the parties entered into another agreement, embracing the same territory set forth in the July 16, 1971 agreement, for a term of two years from the date of execution of said agreement, with an option to cancel on

written notice 30 days prior to October 16, 1972 if a certain condition did not prevail. Differences arose between the parties and by submission dated July 9, 1973, they jointly agreed to submit certain issues to arbitration.

In pertinent part, the submission read:

"Interpretation of Contract: Breach of Contract dated September 1971, para #1, 2, 3, 6 and unnumbered para on page 4. Contract dated July 16, 1971. Para #1, 2, 3, 5, 8.

"Whether the writing dated September 1971 is a second contract and if so, does it supplement the first contract.

"* * * The problem of whether Scepter is allowed to withhold monies as a reserve. Also, how much are they permitted to withhold, if anything?"

There was also a reference to a named artist, the sale of artists' contracts and the effect of sale or lapse on PPX's right to commissions.

The award of the arbitrator, dated February 14, 1974, listed the following questions as those submitted:

"(1) May SCEPTER RECORDS, INC., deduct from gross monies received by SCEPTER artist and/or producer royalties which are due and payable to the account of such artist and/or producer rather than being limited to deducting only those royalties which are due and actually to be paid to such artist and/or producer?

"(2) May SCEPTER RECORDS, INC., retain a proportionate amount in reserve for artist and producer royalties? If so, was SCEPTER RECORDS, INC. justified in retaining the amount set forth in the accounting introduced as Claimant's Exhibit '2'?"

The pertinent part of the award states:

"(1) The claims of PPX ENTERPRISES, INC., hereinafter referred to as PPX against SCEPTER RECORDS, INC., hereinafter referred to as SCEPTER are hereby denied."

Thereafter, PPX without objection by Scepter, sought clarification of the award. The arbitrator denied the application for clarification and reaffirmed the award, stating: "At the hearing held on January 7, 1974 * * * counsel for SCEPTER RECORDS, INC., posed, with [counsel for PPX's] concurrence, the questions to be determined by me. The AWARD dated February 14, 1974, sets forth those questions and my responses thereto." The questions were not otherwise identified. However, a letter dated February 21, 1974, from counsel for PPX to the American Arbitration Association in support of his request for

clarification, as well as the petition to vacate the arbitration award dated May 14, 1974, referred to two questions raised at the hearing, "1. What is the interpretation of the word 'escrow' in the agreement and how should the monies be held in escrow and by whom? 2. For what length of time would these monies be held in escrow?", and asserted that both questions were unanswered by the award. Upon the arbitrator's denial of its request for clarification, PPX moved at Special Term to vacate the award and Scepter cross-moved to confirm the same. The cross motion was granted, the court concluding that implicit in the arbitrator's determination was a finding that Scepter did not breach the agreement.

On appeal, PPX urges that the arbitrator's award should be vacated, since it is irrational, not a final and definite award on the subject matter submitted, and was not confined within the powers conferred upon the arbitrator by the submission. PPX also asserts that Special Term erred in finding that the arbitrator decided all the subject matter submitted.

The arguments advanced by PPX direct attention to CPLR 7511 (subd [b], par 1, cl [iii]) which provides in pertinent part that the award shall be vacated on application of a party when the "arbitrator * * * making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made".

In the instant case neither the July 16, 1971 nor the September 1971 agreement contained an arbitration clause. The arbitration herein took place because PPX and Scepter decided there were certain issues which required clarification and they chose arbitration as the forum for resolution of those issues. Thus, the scope of the arbitration and the extent of the power of the arbitrator depended upon the submission as made, for the submission is the foundation of the arbitrator's authority and jurisdiction. (See *Matter of Marchant v Mead-Morrison Mfg. Co.*, 252 NY 284, 298-303; *Matter of Western Union Tel. Co. [ACA]*, 299 NY 177; *Matter of Granite Worsted Mills [Cowen]*, 25 NY2d 451.)

The language of the submission evidenced the parties' intention to seek interpretation of the contract, and to determine whether a breach occurred with regard to certain designated portions of the July 16, 1971 and September 1971 agreements. The submission requested an answer to the question of whether the September 1971 writing was a second contract and, if so, did it supplement the first contract. That question is

not answered by the award. Nor did the award determine whether and in what amount, if any, Scepter was entitled to withhold moneys as a reserve. It seems rather obvious that resolution of the issue as to reserves was sought in order that the parties might intelligently govern their future conduct and avoid disputes inimical to a harmonious business relationship. That intention was frustrated by the failure of the arbitrator to address himself to the issue and afford an answer to the questions posed.

Whether the questions, earlier referred to, with respect to the meaning of "escrow" and escrow moneys, were *in addition to* the issues initially submitted, as PPX contends, or were *instead of* the original issues, as Scepter contends, the award does not definitively provide an answer as requested. There is nothing from which it might fairly be concluded that the arbitrator made a determination on the merits. The language of the submission was clear and unambiguous and its purpose plain. Thus, the arbitrator in his determination not only phrased the questions somewhat differently, but the award did not even answer the questions as framed by the arbitrator. While the arbitrator is not bound by principles of substantive law or rules of evidence unless the agreement so provides, his disposition here is so unresponsive to the issues posed as to make impossible a final and definite award on the subject matter submitted and should, therefore, be vacated (CPLR 7511, subd [b], par 1, cl [iii]).

Accordingly, the judgment appealed from should be reversed on the law, without costs, the award vacated, and the matter remanded for further proceedings before a different arbitrator to determine the questions submitted.

KUPFERMAN, J. (dissenting), I would affirm.

There were two questions to be answered by the arbitrator:

"(1) May SCEPTER RECORDS, INC. deduct from gross monies received by SCEPTER artist and/or producer royalties which are *due and payable* to the account of such artist and/or producer rather than being limited to deducting only those royalties which are *due and actually to be paid* to such artist and/or producer?

"(2) May SCEPTER RECORDS, INC. retain a proportionate amount in *reserve* for artist and producer royalties? If so, was SCEPTER RECORDS, INC. justified in retaining the amount set

forth in the accounting introduced as *Claimant's Exhibit '2'*?"
(Italics added.)

While no brief can be had for the contumacious attitude of the arbitrator in his cavalier treatment of the request for clarification, it is submitted that the court at Special Term was correct in noting, with due perspicacity, that the questions posed were answered in a manner not at all cryptic to the parties.

Scepter Records, Inc. (hereinafter Scepter), the respondent, appointed PPX Enterprises, Inc. (hereinafter PPX), the petitioner-appellant, to be the international licensing agent for Scepter's "record and tape catalog and for any musical compositions" that it controlled.

The questions posed make it clear that the problem for the arbitrator was, for question 1, whether Scepter was on a cash or accrual basis with respect to the amount it paid its artists and producers. If a cash basis, then there was an amount due to PPX over and beyond that conceded, because PPX for its services as licensing agent was to receive 25% " of all gross monies received during the term of any contracts negotiated * * * after deduction of artist and/or producer royalties actually due and payable."

In denying any claim made by PPX, the arbitrator in effect said that the contract called for an accrual basis.

Further, for question 2, there were two items to be answered, could respondent Scepter maintain a reserve, and, if so, was the accounting thus properly calculated?

In denying any claim by PPX, the arbitrator ruled that a reserve could be maintained and, therefore, the accounting was accurate.

Not only is the ruling clear, but a reading of the letter agreement between the parties permits only of the result reached by the arbitrator.

This court now mandates another arbitration, a direction whose only purpose can be to invite future litigants to apply for clarification or, at least, a course in arbitral etiquette at the American Arbitration Association.

LUPIANO, BIRNS and LANE, JJ., concur with STEVENS, P.J.; KUPFERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County entered on August 21, 1975, reversed, on the law, without costs and

without disbursements, the award vacated, and the matter remanded for further proceedings before a different arbitrator to determine the questions submitted.