STEPHEN HERRIFORD *et al.*, Plaintiffs-Appellees, v. LOUIS BOYLES *et al.*, Defendants-Appellants (Pekin Insurance Company, Intervenor-Appellant).

Third District   Nos. 3—88—0811, 3—88—0833 cons.

Opinion filed February 6, 1990.

BARRY, J., concurring in part and dissenting in part.

Heyl, Royster, Voelker & Allen, of Peoria (John C. Mulgrew, Jr., and John P. Fleming, of counsel), for appellants Louis Boyles and Peoria Charter Coach Company.

Brian P. Mack and John P. Fleming, both of Quinn, Johnston, Henderson & Pretorius, of Peoria, for appellant Pekin Insurance Company.

William K. Brown, of Peoria, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Stephen Herriford and Clifford Herriford, filed suit against the defendants, Louis Boyles and the Peoria Charter Coach Company, to recover damages for injuries they sustained in a collision on December 30, 1983. The defendants' insurer, Transit Casualty Insurance Company, became insolvent. As a result, the Illinois Insurance Guaranty Fund (the Fund) (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82 *et seq.*) assumed Transit's obligation to defend against the plaintiffs' claims.

During the pendency of this action, the plaintiffs pursued damage claims under the uninsured motorist provisions of Stephen Herriford's insurance policy. The policy was issued by the intervenor-appellant, the Pekin Insurance Company (Pekin). In accordance with the terms of that policy, the plaintiffs made a demand to submit their uninsured

motorist claims to arbitration. Following a hearing, the arbitration panel awarded damages in the amount of $9,000 to Stephen Herriford and $5,000 to Clifford Herriford. The plaintiffs did not seek review of the arbitration decision.

Subsequently, the defendants filed a motion to dismiss the plaintiffs' personal injury suit, asserting that the arbitration decision barred further litigation under the doctrines of collateral estoppel and/or *res judicata.* The trial court denied the defendants' motion to dismiss, finding *inter alia,* that the doctrines of *res judicata* and collateral estoppel did not apply in the instant case. This court thereafter granted the defendants leave to appeal pursuant to Rule 308 (107 Ill. 2d R. 308) to answer the following questions certified by the trial court:

> "A. Does Ill. Rev. Stat. (1981) ch. 73, par. 755a require that an insured submit uninsured motorist claims to arbitration or does the statute merely require that insurance contracts afford the insured the option of arbitration?"

And

> "B. Do principles of *res judicata* and/or collateral estoppel under the circumstances of this case preclude plaintiffs from litigating claims which have heretofore been arbitrated to conclusion under the uninsured motorist coverage of plaintiffs' automobile policy?"

Meanwhile, the Pekin Insurance Company filed a petition to intervene in the plaintiffs' cause of action accompanied by a complaint. The complaint alleged that Pekin had a contractual right to claim a lien on any judgment that the plaintiffs received, in order to recover the $14,000 it had paid to the plaintiffs as a result of the arbitration award. The trial court granted the plaintiffs' motion to dismiss Pekin's complaint and entered a finding that there was no just cause to delay enforcement or appeal from that order. (107 Ill. 2d R. 304(a).) The appeal by Pekin was subsequently consolidated with the plaintiffs' appeal and will be addressed below.

In considering the two questions certified by the trial court, we must first look to the operative statutory provisions. The Illinois Insurance Guaranty Fund was established "to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the entry of an Order of Liquidation against an insolvent company, and to provide a Fund to assess the cost of such protection among member companies." (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82.) Under the statute, the Fund is deemed to

be the insolvent company to the extent of its obligation for covered claims and the Fund retains all rights, duties and obligations of the insolvent company, subject to the limitations set forth in the statutes governing the Fund. (Ill. Rev. Stat. 1987, ch. 73, par. 1065.87—4.) Section 546(a) of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a)) provides: "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a).) Section 143a(1) of the Code (Ill. Rev. Stat. 1987, ch. 73, par. 755a(1)) sets forth certain requirements for uninsured motor vehicle coverage. The statute states in pertinent part that "[n]o such policy shall be renewed or delivered or issued for delivery in this State after July 1, 1978 unless it is provided therein that any dispute with respect to such coverage shall be submitted for arbitration to the American Arbitration Association or for determination in the following manner: Upon the insured requesting arbitration, each party to the dispute shall select an arbitrator and the two arbitrators so named shall select a third arbitrator. If such arbitrators are not selected within 45 days from such request, either party may request that such arbitration be submitted to the American Arbitration Association." Ill. Rev. Stat. 1987, ch. 73, par. 755a(1).

On appeal, the defendants argue that section 143a(1) does not mandate that all disputed uninsured motorist claims be resolved through arbitration. The defendants contend that the statute requires only that insurance policies contain provisions for the submission of disputes to either the American Arbitration Association or to a three-member panel selected according to the procedures set forth in section 143a(1). The defendants argue that, if the policy contains only the second alternative, then under the statute only the insured can request that a dispute be settled by arbitration. In that case, whether a claim is settled by arbitration is left to the discretion of the insured and is therefore not mandatory. We note that the policy in the instant case allows for the selection of the arbitration panel in a manner similar to the procedures set forth in section 143a(1). Unlike the statutory procedures, however, under the plaintiffs' policy both parties have the right to demand arbitration. The policy does not contain provision for arbitration before the American Arbitration Association.

The plaintiffs appear to agree with the defendants that section 143a(1) is mandatory to the extent that one of the two alternative

means for selecting the arbitrator must be contained in the policy. The plaintiffs also concede that the mandatory arbitration of their dispute with their insurance company over their uninsured motorist claims does not abridge their constitutional right to trial by jury because, as parties to a contract, they are free to waive constitutional rights through agreement. (See *Irmco Hotels Corp. v. Solomon* (1975), 27 Ill. App. 3d 225, 326 N.E.2d 542.) However, the plaintiffs argue that if the doctrines of collateral estoppel and *res judicata* apply to bar further proceedings against the defendants and the Fund, sections 143a(1) and 546(a) would operate to deny the plaintiffs their constitutional right to have a jury decide the claims in their personal injury suit. The plaintiffs contend that section 546(a) was not meant to be a limitation on recovery. They argue that the statutes must be interpreted to allow them to first bring an action under the uninsured motorist provisions of their own policy and then to proceed in a jury trial against the defendants and the Fund.

■■ ■ In construing a statute, we must ascertain and give effect to the legislative intent best evidenced by the ordinary meaning of the statutory language. (*In re Estate of Norton* (1986), 149 Ill. App. 3d 404, 500 N.E.2d 1022.) In reviewing the statutory language, we find that Section 143a(1) clearly requires mandatory arbitration of all disputed uninsured motorist claims. The statute states that "any dispute with respect to such coverage *shall* be submitted for arbitration." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 755a(1).) Notwithstanding the statutory provisions, the policy in the instant case stated that either party could demand arbitration. The plaintiffs do not challenge the mandatory arbitration of their dispute with the Pekin Insurance Company. We therefore find that under both the statute and the insurance policy in this case the arbitration process was compulsory and resulted in valid awards to the plaintiffs.

■■ Based on our reading of section 546(a) and *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 367 N.E.2d 469, we find no merit to the plaintiffs' constitutional argument. We find nothing in the statute which would have prevented the plaintiffs from pursuing an action to judgment against the defendants prior to asserting their claims under their uninsured motorist coverage. Section 546(a) states that "[a]ny insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim." (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a).) The statute only requires that claimants exhaust their rights under any other applicable insurance policy before proceeding against the Fund.

Section 546(a) is only relevant in determining the recovery from the Fund.

In *Lucas*, the plaintiffs brought actions for injuries suffered in separate collisions involving the same taxicab company. They recovered substantial judgments against the cab company despite the fact that the company's insurer was adjudicated insolvent prior to the trials. Thereafter, the plaintiffs both recovered $10,000 under their uninsured motorist coverage. On appeal, the court held that the trial court was correct in holding that the plaintiffs' recovery from the Fund was limited to the Fund's obligation less the amount of the plaintiffs' recovery under their uninsured motorist coverage.

In *Lucas*, the plaintiffs proceeded to trial and recovered judgments against the defendant before they asserted their uninsured motorist claims. In the instant case, the plaintiffs could have continued their action against the defendants and received a judgment in the trial court, as did the plaintiffs in *Lucas*, before they asserted their uninsured motorist claims. The statute does not mandate that the plaintiffs had to assert claims against their uninsured motorist coverage before pursuing their action to judgment against the defendants. Therefore, sections 143a(1) and 546(a) do not operate to deny the plaintiffs' their constitutional right to a jury determination of their damages.

In addition, in *Spearman v. State Security Insurance Co.* (1978), 57 Ill. App. 3d 393, 372 N.E.2d 1008, which cites *Lucas*, the issue was whether the insured could compel her insurer to arbitrate her uninsured motorist claim prior to her proceeding against the assets of the Fund. We note the Fund was not a party in *Spearman* nor did it represent a party to the litigation in that case. The case did not address the issue of an action against the individual tortfeasor. The language in *Spearman* is ambiguous when the court says "claim against the Fund." (57 Ill. App. 3d at 394.) All that claim represents, however, is the ultimate amount the Fund must pay to the extent that it stands in the position of indemnifier. On the other hand, the amount the injured party is entitled to receive for his or her injury is determined as a collateral matter or in other proceedings. The statute does not contemplate a direct action against the Fund to determine the damages sustained.

An insurance company (or the Fund, in the case of an insolvent insurance company) is not liable as the tortious wrongdoer, but simply stands ready, pursuant to the contract, to indemnify the tortfeasor for the loss. Under the provisions of section 546(a), before a claimant can recover from the Fund, the claimant must first recover any amounts

available under the claimant's own insurance policy.

Having established that the arbitration awards were properly determined, we now address the question of whether, under the circumstances of this case, the doctrines of collateral estoppel and/or *res judicata* apply to bar further litigation of the plaintiffs' personal injury claims.

A valid arbitration award has all the force of an adjudication, and precludes the parties from again litigating the same matters. (*Monmouth Public Schools, District No. 38 v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100.) Initially, we note that *res judicata* would not apply in the instant case because the defendants and the Fund were not parties to the arbitration proceeding. (See *Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253.) On the other hand, collateral estoppel or estoppel by verdict, a branch of *res judicata*, is narrower in scope and prohibits the relitigation of an issue essential to and actually decided in an earlier proceeding by the same parties or their privies. (*Blair v. Bartelmay* (1986), 151 Ill. App. 3d 17, 502 N.E.2d 859.) Identity of party for application of collateral estoppel is satisfied so long as the party against whom its application is sought is identical in both actions and had a full and fair opportunity to contest an issue which was necessarily determined in the prior proceeding. (*Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253.) The doctrine will not be applied if under the circumstances of the case it would result in an injustice to the party against whom it is asserted. *Fred Olson Motor Service v. Container Corp.* (1980), 81 Ill. App. 3d 825, 401 N.E.2d 1098.

Though it appears that there are no cases in Illinois directly on point, we find *Coronet Insurance Co. v. Booker* (1987), 158 Ill. App. 3d 466, 511 N.E.2d 793, instructive. In *Coronet*, the defendant, Booker, originally brought suit against the uninsured motorist and obtained a default judgment in the amount of $6,000. Booker's uninsured motorist claim was submitted to arbitration, and the arbitrator entered an award of $9,000. The plaintiff, Coronet, filed a complaint requesting a declaratory judgment to vacate the arbitration award. The trial court vacated the arbitrator's award to the extent that it exceeded $6,000. On appeal, the court, in *dicta*, held that the trial court correctly reduced the arbitrator's award by $3,000, because under the doctrine of collateral estoppel the amount of Booker's damages had previously been adjudicated in the earlier action.

In the instant case, the plaintiffs' damages were determined by the arbitration panel. The plaintiffs did not seek review of that de-

954

cision, and have not alleged that they did not receive a full and fair opportunity to contest the issue of damages in arbitration. They have not explicitly alleged that their damages exceeded the amount of their awards, but by implication assert that a trial in their personal injury action could result in a larger damage determination. We do not find that under the circumstances of this case application of collateral estoppel would result in an injustice to the plaintiffs. Nor do we find the facts of this case to fall within any of the exceptions to the general rule that the prior determination of an issue of fact or law in a valid determination precludes relitigation of that issue in a subsequent proceeding. (See Restatement (Second) of Judgments §§28, 29 (1982).) By choosing to proceed to arbitration and in that forum having their damages properly and conclusively determined, they are collaterally estopped from relitigating that issue and any other issue necessarily determined in that proceeding. Therefore, the trial court erred in denying the defendants' motion to dismiss plaintiffs' action.

■ Lastly, we consider the propriety of the trial court's dismissal of Pekin's intervening complaint. The trial court dismissed Pekin's complaint based on its interpretation of the nonrecovery provisions of section 546(a) of the Code (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a)). The court reasoned that, since the plaintiffs' recovery against the Fund would be reduced by the amount paid on the plaintiffs' uninsured motorist claim, there was "no money to which any lien [could] attach." On appeal, Pekin contends that it has the right to a contractual lien against the proceeds of plaintiffs' personal injury action. Pekin asserts that its right to claim a lien against any recovery derives from its contract with Stephen Herriford and is supported by the statutory law and public policy of this State.

Pekin's argument, however, fails to take into account the policies underlying the Fund. In *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 520 N.E.2d 743, the plaintiff was injured in the course of his employment while making a delivery to the defendant restaurant. The plaintiff recovered $6,983.56 from his employer's workers' compensation insurer, the U.S. Insurance Group. Thereafter, the plaintiff filed suit against the defendant charging negligence. The plaintiff's employer filed an intervening petition "for the use of U.S. Insurance Group" to recover the $6,983.56 paid to the plaintiff based on the insurer's lien under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). Before the trial, the defendant's insurer became insolvent and the defense against the plaintiff's claim was undertaken by the Fund. After a jury verdict, a judgment of $6,141.60 was entered in favor of the plaintiff. The trial court denied the defendant's

post-trial motion to have the judgment deemed satisfied pursuant to the "covered claim" and "non-duplication of recovery" provisions of the Fund. The reviewing court reversed based on its construction of the term "covered claim" (Ill. Rev. Stat. 1987, ch. 73, par. 1065.84—3), finding that "it would counteract the purposes of the Fund to allow a solvent insurer to be reimbursed by the proceeds of the Fund."

In the instant case, Pekin claims that pursuant to its contract with Stephen Herriford, it has a right to claim a lien against the plaintiffs' recovery. We find the reasoning of *Pierre* dispositive, in that it would undermine the purposes of the Fund to allow Pekin to be reimbursed from the assets of the Fund. We find unavailing Pekin's arguments respecting the statutory law and the general public policy of enforcing insurers' contractual liens and subrogation rights. We conclude that the protections afforded by statute to the assets of the Illinois Insurance Guaranty Fund override the lien provisions contained in the instant policy. Although the *Pierre* court did not address the issue, we find that the the statutory "non-duplication of recovery" provisions of section 546(a) (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a)) provide ample authority for the dismissal of Pekin's intervening complaint.

The judgment of the circuit court of Peoria County as it regards the dismissal of the intervenor-appellant's complaint is affirmed; the order of the circuit court denying defendants' motion to dismiss the complaint is reversed, and this cause is remanded with directions that said motion be granted.

Affirmed in part; reversed in part and remanded with directions.

WOMBACHER, J., concurs.

JUSTICE BARRY concurring in part and dissenting in part:
While I agree that the arbitration process was statutorily required in this case, I cannot subscribe to the majority's determination that, under the circumstances of this case, plaintiffs are precluded by the doctrine of collateral estoppel from litigating their claims in court. I agree with the majority's disposition of the appeal of Pekin Insurance Company.

The stated purpose of article 34 of the Illinois Insurance Code is to "provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the entry of an Order of Liquidation against an insolvent company, and to pro-

vide a Fund to assess the cost of such protection among member companies." (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82.) In other words, the primary legislative "purpose is to place [injured] claimants in the same position that they would have been in if the liability insurer had not become insolvent." (*Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 239, 367 N.E.2d 469.) And, so as to protect the Fund's resources and to avoid windfall judgments, a "non-duplication of recovery" provision is included in the statutory scheme: "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." Ill. Rev. Stat. 1987, ch. 73, par. 1065.96.

Most disturbing to me about my colleagues' opinion is how they deftly sidestep plaintiffs' constitutional question in order to reach their result. In this regard, the parties agree that plaintiffs were first required to claim their damages under the uninsured motorist provisions of the Pekin Insurance policy before proceeding in this suit against the Fund. The majority, however, rejects this single point of agreement and rules that plaintiffs must first obtain a judgment against the insolvent defendants (represented by the Fund); and, in derogation of the principle of *stare decisis*, the majority *sub silencio* overrules binding legal precedent holding that section 546(a) of the Illinois Insurance Code means "that an insured must *first proceed* under any rights conferred by his insurance policy" before proceeding against the Fund. (Emphasis added.) *Spearman v. State Security Insurance Co.* (1978), 57 Ill. App. 3d 393, 395, 372 N.E.2d 1008, 1009, citing *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 367 N.E.2d 469.

The precise question before the *Spearman* court was "whether an insured must first file a claim under the uninsured motorist provisions of his insurance policy, or proceed against the Fund." (*Spearman*, 57 Ill. App. 3d at 395, 372 N.E.2d at 1009.) The *Spearman* court unambiguously ruled in favor of first filing against the insurer; and the parties before us today do not dispute that point, but the majority does. Since the majority *sua sponte* takes issue with *Spearman*, I am constrained simply to note my dissent, and I quote briefly from *Spearman*'s rationale, with which I agree:

> "Requiring plaintiff to proceed first against the Fund would be contrary to the intent of the legislature. Plaintiff is paying a premium, a portion of which buys the uninsured motorist cover-

age. [The insurer] cannot accept this money and then attempt to limit its liability by arguing that plaintiff should make a claim under the Fund rather than her insurance policy." *Spearman*, 57 Ill. App. 3d at 395, 372 N.E.2d at 1009.

Hereafter, in this district at least, in order not to "waive" their right to a jury trial of their damages in these cases, plaintiffs will have to first initiate litigation, contra to section 546(a), against the Fund, thereby incurring the full panoply of litigation fees and expenses. After obtaining a judgment, plaintiffs would then pursue their rights under uninsured motorist insurance. Presumably, by virtue of the doctrine of collateral estoppel, the amount of plaintiffs' uninsured motorist recovery would not be subject to arbitration, but would be subject to limitations based on the coverage of their own uninsured motorist insurance and the judgment entered as a result of their lawsuit against the liable parties. Then, allowing for the statutory offset, plaintiffs would inform the Fund whether or not a balance is owed on the State court judgment. Plaintiffs in the rest of this State, on the other hand, will have to ponder whether the law as respects them is that stated in *Spearman* or by the majority here.

The majority relies on *Lucas*, a case decided before *Spearman* and which addressed only the issue of whether the injured plaintiffs, who were awarded a judgment in excess of the liability limit of the tortfeasor's insurance, could recover the full policy limit from the Fund or whether plaintiffs' recovery was limited to the difference between their recovery from their own uninsured motorist coverage and the insolvent insurer's policy. It is unclear from the facts recited in *Lucas* whether plaintiffs pursued their rights under their own insurance before or after they were awarded judgments at trial. The court held only that the Fund was responsible for the "difference between the amount of the insolvent insurer's policy limits and the amount paid to claimant[s] by [their] own insurer." (*Lucas*, 52 Ill. App. 3d at 239, 367 N.E.2d at 471.) The timing of plaintiffs' claims was not at issue in *Lucas*; therefore, I find the opinion less relevant for purposes of the inquiry before us than *Spearman*.

With respect to the Fund's collateral estoppel argument, I find both of the Fund's primary authorities—*Monmouth Public Schools v. Pullen, District No. 38* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100, and *Coronet Insurance Co. v. Booker* (1987), 158 Ill. App. 3d 466, 511 N.E.2d 793—readily distinguishable.

It should first be noted that *Monmouth* is not a Fund or insurance case, but rather a labor relations dispute. Defendant teacher was on maternity leave during the first semester of the 1981-82 school year.

In December of the following year, having been denied salary credit for the full 1981-82 school year, she brought a grievance. The matter proceeded to arbitration, and the plaintiff school board successfully defended its position on the ground that the employee's grievance was not brought timely pursuant to the parties' collective bargaining agreement. The arbitrator determined that the grievant's complaint was not arbitrable. The teacher then attempted to obtain redress by filing another grievance at the beginning of the 1983-84 school year, complaining of the board's failure to grant the one-year salary credit to bring her salary up to the anticipated level based on the partial year of service in 1981-82. The board sought a judicial stay of the latter grievance arbitration on the ground that the employee's grievance was barred by prior arbitration of salary credit based on the same period of maternity leave. The circuit court agreed with the school board that the doctrine of *res judicata* barred relitigation of the salary schedule question, and that decision was affirmed on appeal. The court stated:

> "[T]he doctrine of *res judicata*, or estoppel by judgment, was applicable despite the fact that the grievances were phrased alternatively in terms of placement on the salary schedule for the school years 1982-83, and 1983-84; this does not change the actual issue [citation], which was found as not timely pursued initially under the specific terms of the bargaining agreement."

*Pullen*, 141 Ill. App. 3d at 69, 489 N.E.2d at 1106.

In *Coronet*, the insured, Booker, obtained a $6,000 default judgment in the circuit court against an uninsured motorist in Booker's lawsuit seeking damages for injuries sustained in a car accident. Booker also filed a claim with Coronet, his insurer, under the uninsured motorist provisions. The insurance claim proceeded to arbitration, and the arbitrator awarded Booker $9,000. Coronet then sought declaratory judgment in the circuit court on grounds that the arbitrator had exceeded his authority by awarding an amount in excess of $6,000. The circuit court agreed and entered judgment vacating the arbitrator's award to the extent it exceeded $6,000. On appeal, the court affirmed, holding that the doctrine of collateral estoppel barred relitigation of the question of damages. The court reasoned:

> "The doctrine of collateral estoppel prevents relitigation of an issue previously decided in an earlier proceeding by the same parties or their privies. The doctrine may be applied as long as the party against whom application of the doctrine is sought, Booker in this case, is identical in both actions and had a full and fair opportunity to litigate the issue which was necessarily

determined in the prior proceeding. [Citation.]

At arbitration in the instant case, the only issue was liability; whether the uninsured motorist caused Booker's injuries. No dispute existed as to damages because they were previously adjudicated in Booker's prove-up against the uninsured motorist. Consequently, the trial court correctly reduced the arbitrator's award by $3000." *Booker*, 158 Ill. App. 3d at 471, 511 N.E.2d at 797. `

Obviously, neither *Monmouth* nor *Coronet* answers the question before us today—whether an arbitration award of damages within the limits of an insured's uninsured motorist coverage has *res judicata* or collateral estoppel effect on the insured's previously filed lawsuit against the uninsured motorist. The party against whom issue preclusion was asserted in both *Monmouth* and *Coronet* had had an opportunity to fully present his case in the forum initially selected. In *Monmouth* a second arbitration proceeding was sought to resolve an issue previously resolved in arbitration between the same parties. In *Coronet* an injured insured obtained judgment by default in the lawsuit against the uninsured driver before the question of liability was submitted to arbitration under the uninsured motorist provisions of the injured party's policy. At first blush the facts here appear to be the mere converse of those the court considered in *Coronet*, but in fact they compel the same result. Unlike the present case, the issue submitted for arbitration in *Coronet* did not require the arbitrator to redetermine damages.

My independent research reveals a case decided by the court of appeals of Michigan which is factually closer to the case before us than either *Monmouth* or *Coronet*. In *Detroit Automobile Inter-Insurance Exchange v. Kurak* (1978), 81 Mich. App. 217, 265 N.W.2d 86, the Michigan court determined that neither collateral estoppel nor *res judicata* precluded an insured who was insured under both her own and her father's insurance policy from pursuing her rights to arbitrate damages under the second policy after having recovered an arbitration award within the limits of the first policy. The court cautioned only that, to avoid duplication of recoveries, the amount of the first arbitration award was to be considered in any subsequent arbitration. In my opinion the circumstances before us present a far more compelling case for rejecting *res judicata* and collateral estoppel defenses. It would seem that if an arbitrator's award does not preclude subsequent arbitration of a plaintiff's damages under a second policy of insurance, there should be no reason why such award should preclude plaintiffs' pursuit of full and just compensation from the liable parties'

insurer in a court action.

Further support for rejecting these doctrines appears in relevant sections of the American Law Institute's Restatement (Second) of Judgments. Whereas an arbitration award may generally be said to have preclusive effect on subsequent litigation of issues therein determined (Restatement (Second) of Judgments §84 (1988)), the rule is far from inflexible. It is, in truth, fraught with exceptions. I find several of those exceptional circumstances that support the circuit court's decision to deny issue preclusive effect to the arbitrators' awards of damages in this case. They are as follows:

First, "[t]reating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved." (Restatement (Second) of Judgments §29(1) (1982).) By statute, plaintiffs here were required to first "exhaust" their rights under the Pekin policy. (*Spearman*, 57 Ill. App. 3d 393, 372 N.E.2d 1008.) But, the statute also anticipates·that the injured parties will be in no worse position by virtue of the defendants' insurer's insolvency than they would have been had the insurer been solvent. Ergo, if plaintiffs injured by liable parties whose insurers are solvent are entitled to present their case to a jury for a determination of damages, then it would be an injustice incompatible with the statutory scheme to find that the plaintiffs here should be denied an opportunity to litigate their damages in a court action.

Second, "[t]he forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined." (Restatement (Second) of Judgments §29(2) (1982).) As aforesaid, prior to the Fund's participation, plaintiffs here demanded a jury trial—a valuable procedural and substantive opportunity not available in arbitration (See *Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 530 N.E.2d 431 (discussing in an employment context, wherein a retaliatory firing was charged, the danger of preempting State court action and thereby delegating the ultimate determination of Illinois public policy to privately appointed arbitrators)), and a right declared by Thomas Jefferson to be more precious to the maintenance of a democracy than the right to vote.

Third, "[t]reating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto." (Restatement (Second) of Judgments §29(6) (1982).) To the extent that issues of liability, including plaintiffs' contributory negligence if any, are not submitted for the

arbitrators' consideration, defendants would be potentially prejudiced by treating the issue of damages as conclusively determined by an arbitration award. Moreover, in other circumstances, for example if the arbitrators' award had greatly exceeded the uninsured motorist coverage limits, the Fund would likely resist application of issue preclusion doctrines on grounds that defendants' position was inadequately represented by plaintiffs' insurer, that they were unfairly prejudiced by the arbitration proceedings, or that the arbitrators had exceeded the scope of their authority.

Fourth, "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two [fora] or by factors relating to the allocation of jurisdiction between them." (Restatement (Second) of Judgments §28(3) (1982).) In this case, the "Decision of Arbitrators" as it appears in the record gives very little insight into the scope of the issues or formality of the proceedings before the arbitrators. It recites merely, "This cause having come on for hearing before the undersigned arbitrators, petitioners [Stephen and Clifford Herriford] present personally and by Morton S. Goldfine, their attorney, and respondent [Pekin Insurance Company] present by John P. Fleming, the arbitrators having heard the testimony and stipulated documentary evidence and being fully advised in the premises hereby renders the [aforementioned] award[s]." The use of stipulated evidence would indicate a less adversarial posturing of the parties to the arbitration than would be expected in the action between the injured plaintiffs and the defendants in this suit. See also *State Farm Mutual Automobile Insurance Co. v. Amirpanahi* (1988), 50 Wash. App. 869, 751 P.2d 329 (wherein injured insureds arbitrated with liable party's insurer and obtained an award $14,763.42 in excess of the coverage ceiling of the liable party's insurance. Injured insureds then pursued their claim under their own uninsured motorist policy with State Farm. State Farm resisted arbitration of the damages question on grounds of issue preclusion, and sought a declaratory judgment ordering them to pay only the difference between what the injured insureds had already recovered and the first arbitration award. On appeal, the court rejected the insurer's position on the ground that the arbitrator had exceeded his limited authority in determining damages in excess of the policy limit. The court observed that its decision was in accord with Restatement (Second) of Judgments §28(3) (1982)).

And fifth, "other compelling circumstances make it appropriate that the party be permitted to relitigate the issue." (Restatement (Second) of Judgments §29(8) (1982).) In this case, the injured plain-

tiffs sought first to litigate the question of damages in the circuit court, but for reasons beyond their control, the court has become the forum for the "subsequent" action. There is no suggestion that it was foreseeable to plaintiffs at the time of their initial filing that the Fund would be undertaking the defense, thereby forcing them to exhaust their rights under the uninsured motorist provisions of Stephen's policy before they could litigate the question of damages to a jury. (See *Spearman*, 157 Ill. App. 3d 393, 395, 372 N.E.2d 1008.) These circumstances—the fact that the Fund was an unforeseen participant in the suit, that plaintiffs made their request for a jury determination of damages in the first place and that they were placed in the position they now find themselves by force of Illinois statute and precedential case law—are compelling justifications for permitting them to pursue their litigation in State court.

The Fund suggests that if plaintiffs are not satisfied by the arbitrators' award of damages in an amount less than policy limits, then to avoid issue preclusion they were required to vacate their awards in court pursuant to the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 112) and file yet another suit against Pekin Insurance in order to "exhaust" their rights under the uninsured motorist provisions. Apparently the Fund would have the plaintiffs risk losing the limited damages won in arbitration, for which an uninsured motorist premium was paid, in order to pit their legal and monetary resources against a battery of lawyers representing not only defendants and the Fund, but their own insurer as well, if they are to become entitled to litigate their damages in court. In my opinion, the procedure suggested by the majority is likewise cumbersome and costly. I see sore little in the facts of this case to commend rigid application of the doctrines of *res judicata* or collateral estoppel.

Simply stated, I reject the Fund's position as inimical to the legislative purpose of every statute applicable to this action. In sum, and notwithstanding plaintiffs' legitimate concerns of the trampling of their constitutional rights that the majority's determination represents, I find that general policies of fairness as expressed in the afore-cited authorities support the decision of Circuit Judge Eagleton to deny defendants' motion to dismiss this suit on grounds of issue preclusion.

I would affirm the judgment of the circuit court and remand this cause for further proceedings.