## Agway, Inc. v. Keith Gray

[706 A.2d 440]

No. 95-651

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 21, 1997

Motion for Reargument Denied December 19, 1997

314

*Susan J. Steckel*, Montpelier, for Plaintiff-Appellee.

*Robert R. Bent* of *Zuccaro, Willis & Bent, P.C.*, St. Johnsbury, for Defendant-Appellant.

**Morse, J.** Defendant Keith Gray appeals from a summary judgment of the Orleans Superior Court enforcing a New York judgment in favor of plaintiff Agway, Inc. Gray contends the court erred in ruling that his counterclaims for consequential damages were barred by the New York judgment entered on an arbitration award. We affirm.

Agway, whose principal place of business is in Syracuse, New York, sold to Gray and installed at his farm in Holland, Vermont an automated milking parlor. The two contracts of sale contained identical arbitration clauses providing that:

[a]ny controversy or claim relating to this agreement shall be settled by arbitration in Syracuse, New York, in accordance with the rules of the American Arbitration Association, and any judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The determination of the arbitrators shall be final and binding upon both parties.

The contracts also contained a waiver of any claim against Agway for incidental or consequential damages of any nature.

Installation and modification of the equipment was completed early in 1992. Alleging that Gray had paid no part of the bill, Agway demanded payment in October 1992, and thereafter filed a demand for arbitration under the contracts.

Gray was represented by counsel in the arbitration proceeding and actively contested Agway's claim. He contended that the milking equipment was defective, that he had lost income from decreased milk production, and that he had incurred expenses to replace cows allegedly injured by the milking parlor. Gray sought an offset against the sale price for the reduced value of the defective milking equipment (his lost benefit of the bargain) of approximately $18,000, as well as an offset for his consequential damages, which allegedly exceeded $125,000.

In connection with his claim for consequential damages, Gray asserted that the contract clause excluding such damages was unenforceable for two reasons. First, he argued that the exclusion had "fail[ed] of its essential purpose." N.Y. U.C.C. § 2-719(2) (McKinney 1993). Second, he asserted that the exclusion was "unconscionable" under N.Y. U.C.C. § 2-719(3), which provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Gray argued in this regard that the parties enjoyed vastly unequal bargaining power ("Gray was an individual dairy farmer dealing with a large commercial operation") and that the agreement was a classic contract of adhesion; it had been presented on a preprinted form prepared by Agway, and its effect was never explained. Gray cited a number of legal authorities in support of his claim, including *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606 (App. Div. 1983), and *Clark v. International Harvester Co.*, 581 P.2d 784 (Idaho 1978).

Following the hearing, the arbitrator reduced Agway's claims by $15,950 attributable to defective materials in the milking parlor, but found no merit to Gray's claim for consequential damages, and

accordingly entered an award of $57,945 in Agway's favor. In response to Gray's motion for modification, the arbitrator reduced the award to $56,945. The New York Supreme Court for Onondaga County subsequently granted Agway's motion to confirm the award and entered judgment in favor of Agway in the amount of $58,048.18 (the award plus interest). Gray neither appealed nor otherwise sought to modify the award in New York.

Agway thereafter brought this action in the Orleans Superior Court to enforce the New York judgment. Gray moved to stay enforcement of the judgment, arguing that the arbitrator had lacked jurisdiction to hear any counterclaim or defense relating to the unconscionability of the consequential-damages exclusion. He also asserted counterclaims for breach of warranty and negligence, seeking consequential damages of $300,000. Following a hearing, the trial court granted Agway's motion to dismiss the counterclaims and entered summary judgment in favor of Agway, ruling that Gray's counterclaims were barred under principles of res judicata. This appeal followed.

The principle of res judicata, or claim preclusion, "'bars litigation of claims or causes of action which were or might properly have been litigated in a previous action.'" *State v. Dann*, 167 Vt. 119, 125, 702 A.2d 105, 109 (1997) (quoting *Cold Springs Farm Dev., Inc. v. Ball*, 163 Vt. 466, 472, 661 A.2d 89, 93 (1995)). The related doctrine of collateral estoppel, or issue preclusion, "prevents a party from relitigating an issue that has necessarily been decided in a previous action." *Cold Springs Farm*, 163 Vt. at 468, 661 A.2d at 91. The core inquiry in either case is whether there was a "full and fair opportunity to litigate" the matter in the earlier action. *Id.* at 469, 661 A.2d at 91. As one court has succinctly explained: "The doctrine of *res judicata* is based upon requirements of justice and public policy which reflect the consideration that there be an end to litigation after each party has had a full and fair opportunity to present all pertinent facts." *Kemling v. Country Mut. Ins. Co.*, 437 N.E.2d 1253, 1255 (Ill. App. Ct. 1982).

For purposes of both res judicata and collateral estoppel, it is widely accepted that an arbitration is in the nature of a judicial inquiry, and thus has the same force and effect of an adjudication in terms of precluding the same parties from relitigating the same subject. See, e.g., Restatement (Second) of Judgments § 84(1) (1982) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."); *SCAC Transport (USA) Inc. v.*

*S.S. Danaos*, 845 F.2d 1157, 1163 (2d Cir. 1988) (arbitration decision can have collateral estoppel or res judicata effect when arbitration "'affords basic elements of adjudicatory procedure'") (quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985)); *Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987) ("[T]he decisions of an arbitrator can have res judicata (claim preclusion) or collateral estoppel (issue preclusion) effect on a subsequent law suit."); *Herriford v. Boyles*, 550 N.E.2d 654, 658 (Ill. App. Ct. 1990) ("A valid arbitration award has all the force of an adjudication, and precludes the parties from again litigating the same matters."); *Bailey v. Metropolitan Property & Liab. Ins. Co.*, 505 N.E.2d 908, 910 (Mass. App. Ct. 1987) ("An arbitration decision can have preclusive effect . . . ."); *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn. 1990) ("Most courts have considered an arbitration award to constitute a 'prior adjudication' for purposes of triggering an estoppel.").

In deciding whether to give preclusive effect to an arbitration, the key inquiry remains whether the parties were afforded a full and fair opportunity to litigate. See *Kemling*, 437 N.E.2d at 1257 (Collateral estoppel applies to issue decided in arbitration if "the party against whom the estoppel is asserted had a full and fair opportunity to contest it at that time."); *Bailey*, 505 N.E.2d at 910 ("When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same [preclusive] effect . . . .").

Here, the record shows that Gray not only had the opportunity to litigate the consequential damage issue, but took full advantage of that opportunity. He acceded to the arbitration, was represented by counsel, and vigorously challenged the validity of the consequential-damage exclusion, citing both facts and law in support of his claim that the clause was unenforcable. Indeed, he acknowledged in his post-hearing arbitration memorandum that he had been "afforded the opportunity to introduce witnesses and evidence in support of [his] positions and to cross-examine the witnesses called by the other party."

In its decision, the arbitrator expressly rejected Gray's claim that the exclusionary clause had failed of its essential purpose, ruling that it was valid and enforceable. Gray now notes that the decision does not also expressly reject the unconscionability claim. He fails to explain, however, why he apparently never sought clarification of the ruling, as he was entitled under New York law. N.Y. Civ. Prac. L. & R.

7509 (McKinney 1980). Although he filed a request to modify the award, he apparently did not seek a more explicit ruling on this issue. Moreover, when Agway subsequently moved to confirm the award in New York, Gray neither opposed the motion nor filed his own cross-motion to vacate, amend, or modify the award on the basis that the decision failed to explicitly address an issue fully litigated in the arbitration proceeding, as he was equally entitled under New York law and practice. *Id.* 7511(b)(1)(iii); *PPX Enters. v. Scepter Records, Inc.*, 381 N.Y.S.2d 263, 265 (App. Div. 1976) (award was so unresponsive to issues posed in arbitration as to require that it be remanded). Nor, finally, did Gray ever appeal from the judgment entered on the award in New York.

■ Under these circumstances, we have little difficulty concluding that Gray was afforded a full and fair opportunity to litigate the issue of consequential damages in the arbitration proceeding, that the judgment entered on that arbitration was final and conclusive of the issue, and that neither justice nor public policy would be served by allowing him to relitigate the same issue against the same party in Vermont.

■ The dissent raises two objections to this conclusion. First, it contends that Gray was somehow denied the same opportunity to challenge the validity of the damage exclusion in the New York arbitration that he would have received in a Vermont court. On the contrary, the law of New York is clear that an arbitrator enjoys broad authority to reject a contractual damage limitation as unconscionable:

> The fact that the contracts contain a limitation of liability does not eliminate the question of consequential damages as a controversy or claim within the scope of the arbitration clause. Issues concerning the applicability of the damage limitation clause, its enforceability in this particular instance, its validity, and any other issues concerning the question of the amount of damages recoverable in the face of such provision are for the arbitrator to determine.

*Allen Knitting Mills, Inc. v. Dorado Dress Corp.*, 333 N.Y.S.2d 848, 850 (App. Div. 1972). As New York's highest court has observed, "'[t]here is no doubt that an arbitrator, if he so decides, may indeed refuse to enforce such a damage limitation clause on the ground of unconscionability . . . .'" *Id.* at 851 (quoting *Granite Worsted Mills v. Aaronson Cowen, Ltd.*, 255 N.E.2d 168, 171 (N.Y. 1969). Thus, the

arbitrator's scope of review and discretion to reject the damage-limitation clause as unconscionable was as broad as any court in New York or Vermont.

■ The dissent appears to suggest nevertheless that Vermont and New York law differ in this regard, and that a Vermont court would have been more protective of Gray's rights. The dissent cites no authority for this proposition, however, and our recent case law indicates that Vermont takes the identical approach to determining the validity of exclusionary clauses under U.C.C. § 2-719(3) as jurisidictions elsewhere. See *Wilk Paving, Inc. v. Southworth-Milton, Inc.*, 162 Vt. 552, 559, 649 A.2d 778, 783 (1994) (rejecting plaintiff's claim of unconscionability under 9A V.S.A. § 2-719(3) and upholding contractual exclusion of consequential damages notwithstanding plaintiff's claim of oppression and surprise).

Finally, the dissent suggests that the counterclaim for consequential damages was not barred in Vermont because in New York counterclaims are permissive rather than compulsory. The distinction would be relevant if the assertion here were that Gray could have, but failed to, litigate the claim in New York. See *Cold Springs Farm*, 163 Vt. at 472-73, 661 A.2d at 93. In this case, however, the claim was *actually* litigated between the parties. Hence, it is plainly barred. *Id.*

*Affirmed.*

**Dooley, J.,** dissenting. Based on the facts and history described in the majority opinion, its conclusion looks fair: defendant went through arbitration and lost and is now trying to raise by counterclaim the same issues he lost in arbitration. If the majority had fully described the events and the position of defendant, I would have agreed with it. This is, however, a case in which context is everything, and the key points of the context are missing from the opinion. Once the context is understood, I believe defendant should be allowed to pursue his counterclaim; thus, I dissent from the majority opinion affirming its dismissal.

There are three items missing from the majority analysis. The first, and most important, is the full scope of the dispute-resolution part of the contract and its significance for the applicable law. The contract provided not only that any dispute over the milking equipment would be decided in a New York forum, but also that New York law would govern the dispute. The choice-of-law question is particularly important to this case because the laws of Vermont and New York are different with respect to contractual waivers of consequential damage

claims arising out of a breach of warranty. Under Vermont law, provisions that exclude or modify remedies for breach of certain warranties are unenforceable with respect to the sales of new consumer goods, 9A V.S.A. § 2-316(5), and the definition of "consumer" extends to farmers who purchase goods for the operation of a farm for business purposes. 9 V.S.A. § 2451a(a); see 9A V.S.A. § 2-316(5) (referring to 9 V.S.A. § 2451 for definition of "consumer"). In New York, such exclusions are valid. See N.Y. U.C.C. § 2-316(4) (McKinney 1993).

The difference in the law of modification of warranties is critical to this case. Plaintiff sold defendant a defective milking parlor. Under Vermont law, defendant does not have to pay full retail value for the parlor and can recover for any lost milk production as a result of the defective parlor, irrespective of any contractual provision that attempts to limit defendant's remedies. Under New York law, defendant does not have to pay full retail value for the parlor, but cannot recover any damages caused by the defective parlor. Since the sums claimed for consequential damages far exceed the value of the parlor, the applicability of New York law greatly restricts defendant's remedy.

The designation of a New York dispute resolution forum and the use of New York law is contained in contract boilerplate about which there is no negotiation. Although the sale was consummated in Vermont, the goods were delivered in Vermont and the parlor was used in Vermont, New York was chosen apparently because the main office of plaintiff is in Syracuse, New York. If this dispute were to reach the merits, I think it likely we would hold that the forum selection clause was unreasonable under the circumstances and unenforceable. See *Chase Commercial Corp. v. Barton*, 153 Vt. 457, 460, 571 A.2d 682, 685 (1990). For similar reasons, I believe we would not enforce a contractual requirement that New York law governs this dispute. See Restatement (Second) of Conflict of Laws § 187 cmt. b (1971); see generally E. Scoles & P. Hay, Conflict of Laws § 18.5, at 640 (1982) (noting that choice of law provisions in adhesion contracts generally "will be ignored only if its application would be to the detriment of a weaker party" and collecting cases). The Vermont Legislature's decision to protect farmers by ensuring that they have full warranty protection when they buy goods is illusory if, by boilerplate, the seller can contractually limit the warranties and declare that the law of another state, where the contractual limit is valid, applies to any contract dispute.

Second, defendant intentionally removed the claim stated in his counterclaim from the jurisdiction of the New York arbitrator. Under

the rules of the American Arbitration Association, counterclaims are permissive, but a party asserting a counterclaim must pay a filing fee based on the amount of the claim. For defendant's counterclaim the amount of the filing fee would have been $1,500. After learning of the fee, defendant abandoned his plan to assert a counterclaim before the arbitrator. The arbitrator's initial award stated that he had resolved defendant's counterclaim against him. Defendant's counsel sent the arbitrator a letter requesting that the statement be deleted:

> The Respondent . . . never filed any counterclaim for damages in the arbitration proceeding and, in fact, made an express decision not to do so to prevent possible *res judicata* problems should the respondent seek to litigate damage claims in the future.
>
> There was evidence of damage suffered by the respondent introduced at the arbitration hearing. That evidence, however, was introduced as a defense to the Petitioner's claim for the price of the milking parlor, not as evidence in support of any counterclaim.

The arbitrator then issued an amended award deleting any reference to a counterclaim.

Counterclaims are also permissive in New York courts. See N.Y. Civ. Prac. L. & R. 3019, Practice Commentary 3019:2 (McKinney 1991). Thus, defendant was under no obligation to present the counterclaim to the New York court when plaintiff moved to confirm the arbitration award.

Third, the arbitrator never considered the claims that defendant raises in his counterclaim. In response to arguments made by defendant, the arbitrator ruled that the clause limiting damages was part of the basic agreement between the parties and that "[t]he proof does not support [the] contention" that it was only part of separate documents used to identify the items supplied and the price. Further, the arbitrator found that the warranty had not "failed of its essential purpose" so that consequential damages for breach thereof were not available under UCC § 2-719(2). The arbitrator never found that defendant did not suffer consequential damages or rule on the validity of the contractual prohibition on the recovery of such damages. I cannot agree with the majority's statement that the arbitrator "found no merit to Gray's claim for consequential damages."

At the beginning of this dissent, I summarized the way the case should be viewed from the majority's perspective. Let me now suggest an alternative view:

> A farmer, whose business has been greatly damaged by a defective milking machine sold by plaintiff, faces a demand for payment for the machine and a collection action in a distant forum where he cannot effectively seek damages for his real losses. He tries to minimize plaintiff's claims, but states that he reserves the right to bring a claim for his losses in a forum where it can be heard. He waits until the case reaches Vermont, where the law supports his claim for damages and brings his claim at the earliest possible opportunity in response to plaintiff's enforcement of judgment action.

We can say, of course, that defendant had alternatives. He could have refused to participate in the New York arbitration and instead brought an action here seeking to challenge the forum and law-selection clauses, as well as the contractual limit on warranty damage claims. That would have been an expensive, and I think unnecessary, alternative. Plaintiff has used the arbitration proceeding to obtain a judgment, and that judgment is not in issue. It makes little difference whether we intervene now or in the beginning of this dispute.

As the majority states, the issue before us is whether defendant had a full and fair opportunity to litigate his claim for consequential damages as a result of plaintiff's breach of warranty. Dragged to an inconvenient forum and forced to litigate under substantive rules that virtually prohibited his claim, I believe defendant had no full and fair ability to litigate his claim for consequential damages. Moreover, he appeared in fora where counterclaims were not compulsory so his failure to raise a counterclaim there should not preclude him from doing so here. See Restatement (Second) of Judgments § 22(1) (1982). Nor is this one of the limited circumstances where the relationship between the counterclaim and plaintiff's claim is such that the counterclaim would nullify the initial judgment or would impair rights established in the initial action. See *id.* § 22(2)(b) cmt. f; *Rowland v. Harrison*, 577 A.2d 51, 57 (Md. 1990) ("[W]here the same facts may be asserted as either a defense or a counterclaim, and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim."). Irrespective of the result of the counterclaim, plaintiff still has its judgment and may enforce it.

I would reverse the grant of summary judgment and allow defendant to go forward with his counterclaim.* I am authorized to say that Justice Gibson joins in this dissent.

---

*Plaintiff has not argued that defendant's counterclaim, if it survives, must be presented to arbitration, an issue that is intertwined with the forum location and choice-of-law questions. To the extent it remains in the case, it should be resolved in the first instance by the superior court.