In Re Shelburne Supermarket, No. 65-03 CnCv (Katz, J., Oct. 22, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT

Chittenden County, ss.:                             Docket No. 65-03 CnCv

SHELBURNE SUPERMARKET

ENTRY

Both parties now seek to have the court amend its findings issued September 11, 2003.  Steven Clayton seeks to have the court determine the amount of dividends his parents, Harry and Lucille, must repay from the time in which they held the contested stock, and thereby received the dividends.  Harry and Lucille seek to have the court determine how much Steven must pay them under the original stock transfer deal, determined by the arbitrator to still be in effect.  On the present record, we decline to do either.

This unfortunate state of events stems from the failure of the parties of their arbitrator to clearly delineate the nature and scope of the dispute to be resolved by arbitration. Because of this failure, the arbitrator issued an award which did not deal with either of these issues, although they were certainly both ripe for decision. We infer, from the arbitrator's failure to resolve either the remaining-purchase-price or intervening-dividends issues, that no significant evidence regarding either such issue was presented to the arbitrator. After the award was issued, and the parents moved in this court to modify the award, that motion was couched strictly in terms of the statute of limitation question. Although the original purchase price, and the $55,000 figure are mentioned in the original motion, here, they are something of an afterthought, and the implication is that this original, underlying obligation is really not being contested–only the statute of limitations question needed clarification here.

Similarly, we are of the view that the remaining-price and intervening-dividend issues were mentioned in passing during trial in this court, they were never flagged as substantial issues in contention. Particularly the intervening dividends, which gross at over $1.6 million, were never flagged as an issue in the evidence or the legal arguments of the parties. And we emphasize this issue over the other only because of its magnitude. The "smaller" issue seems to involve $11,000, plus the possibility of 14 years interest. The "larger" a great deal more money.

The parents argue that O'Dea's arbitration award should be held to be preclusive of the intervening-dividends issue. They make this argument on the basis of several items of Attorney Detora's "Narrative

History" and Legal Memo submitted to O'Dea in advance of the arbitration hearing. They point first to the third paragraph in the Narrative:

> The purchase price for the stock was to be $100,000 * * * By July, 1987, Steven had paid $55,770.28 to Harry and Lucille for the purchase of the shares of stock ....

Next, the parents point to Detora's final sentence, page 3 of his "Legal Memo:"

> B. The entirety of the July 20, 1987 transactions should be voided, with the additional shares of stock returned to Steven Clayton, who is willing and able to complete the purchase.

In passing, we note that this final sentence has completely departed from its context within the legal memo. Instead, it seems to be a prayer for relief, which is apparently why the parents are now citing it. Their argument seems to be: Steven made this prayer for relief to the arbitrator; he was willing to complete the purchase; by implication he was not counter-claiming regarding the dividends; he could have so counter-claimed; res judicata. We reject this argument, because we think it falls into the category of "heads I win, tails you lose." Had the arbitrator taken up the intervening-dividends issue, had he ruled in favor of Steven, the parents would be fully justified in seeking to have such a award overturned. There was never any explicit discussion putting that issue on the table; at even half the $1.6 million (net of taxes), it dwarfs the other issues in terms of dollar impact; an interest award might well bring it back to gross amount; there was no evidence presented on the point. Under the circumstances that these parties wholly failed to clearly define the scope

of their arbitration, it would be certainly unfair to hold one party to have this issue precluded, while the other not at all. The preclusive effect of an award is as much a creature of the arbitration contract as any other aspect of the legal-dispute machinery established by such a contract. IDS Life Ins. Co. v. Royal Alliance Assoc's., 266 F.3d 645, 651 (7th Cir. 2001) (Posner, J.) ("Arbitration is customized, not off-the-rack, dispute resolution."). O'Dea's one-size-fits-all arbitration agreement, wholly omitting (dare we say, precluding) any discussion of the scope of the dispute, is no basis for broadly defining that dispute so as to include, and thereby preclude, the dividend claim. And the basis for preclusion here– Detora's mention of willingness to complete the transaction–is anything but an explicit waiver of the dividend matter. Cf. Agway v. Gray, 167 Vt. 313, 319 (1997) (suggesting that preclusion does not apply to a permissive counterclaim that is not litigated). Finally, we note that the O'Dea arbitration was set in motion not by these parties but by Attorney Eggleston, on behalf of the corporation. He saw that the corporation could not engage in effective governance when the dispute over share ownership prevented any meaningful meetings or votes. This question of share ownership was what drove these parties to arbitrate; it is what they thought they were arbitrating; it is the issue on which they presented evidence and argument.

We do not consider it fair to decide these issues on the present record. Although the court joins counsel and the parties in disfavoring serial trials, the fair resolution of these questions points to resolution other than merely by amending findings. The remaining-price question seems likely to involve disputed, material facts, hence pointing to trial, even if only two witnesses will testify. The intervening dividends are more likely to involve uncontested facts, as their payment is simply a question of

bookkeeping.  Instead, they probably raise legal issues more appropriately dealt with on summary judgment.

The court suggests that counsel discuss this entry and advise as to their respective decisions.

Dated at Burlington, Vermont, _____, 2003.

_____
Judge