BARBARA CLAUDY, Indiv. and as Adm'r of the Estate of Keith Claudy, Deceased, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. COMMONWEALTH EDISON COMPANY *et al.*, Defendants and Third-Party Plaintiffs (Larry Jones, Indiv., and d/b/a AAA Tree Service, Third-Party Defendant-Appellee and Cross-Appellant).

First District (2nd Division)   No. 1—91—1171

Opinion filed September 14, 1993.—Rehearing denied November 18, 1993.

Bernard R. Nevoral & Associates, Ltd., of Chicago (Bernard R. Nevoral, David L. Cwik, and Karen A. Keefer, of counsel), for appellant.

Kiesler & Berman, of Chicago (Alan P. Miller, R. Howard Jump, Patti M. Deuel, and Jeffrey S. Pavlovich, of counsel), for appellee.

Cassiday, Schade & Gloor, of Chicago (Rudolf G. Schade, Timothy J. Ashe, and Michael M. Tannen, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

Cooney & Conway, of Chicago (James T. Newman, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Barbara Claudy brought a wrongful death action against defendants Commonwealth Edison Company (Edison) and the City of Sycamore (the City) in connection with the death of her husband, Keith Claudy, an employee of AAA Tree Service, who was electrocuted while engaged in removing a tree near Edison's power lines in Sycamore, Illinois.[1] AAA Tree Service had been retained by the City to remove the tree.[2]

The City filed a third-party complaint against decedent's employer, Larry Jones, individually and doing business as AAA Tree Service, which was later amended to include a claim for contribution. Claudy thereafter agreed to a settlement of her suit with the City, whereby she received $400,000 and an assignment of the City's third-party action for contribution against Jones. In return, Claudy released all of

"the RELEASEES and all other persons, entities or parties of and from any and all liability now accrued or hereinafter to accrue on account of any and all claims or causes of action which CLAUDY now has or may hereafter have arising from the death of Keith Claudy on or about July 24, 1979 or otherwise arising from the accident."

The settlement agreement identified the "RELEASEES" as:

"The City of Sycamore, a municipal corporation, together with its officers, associates, agents, employees, attorneys, and insurers ***."

The court approved the settlement and assignment after finding that they were made in good faith. One year later, Jones moved to dismiss the third-party action for contribution against him, arguing that pursuant to the terms of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*), a tortfeasor who settles with a claimant is not entitled to recover contribution from another tortfeasor whose liability is not extinguished, and that in order to be discharged by a release, a tortfeasor must be specifically identified. (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361.) Accordingly, Jones contended that since he was not specifically named in the release, the City had no right to contribution from him and there-

---

[1]Edison was subsequently dismissed from the case with prejudice.

[2]See *Claudy v. City of Sycamore* (1988), 170 Ill. App. 3d 990, 524 N.E.2d 994, reversing summary judgment previously granted to the City.

fore had nothing to assign. (*Puckett v. Empire Stove Co.* (1989), 183 Ill. App. 3d 181, 539 N.E.2d 420.) Alternatively, assuming the release did in fact extinguish his liability, he argued that "the purported assignment [was] an attempt to contravene the Contribution Act, the Worker's Compensation Act, as well as, the Illinois Insurance Guaranty Fund Act."

The City responded that the court was without jurisdiction over the issue because Jones had waived any objections to the release and assignment by failing to raise them when the court considered whether the settlement was made in good faith. Moreover, the City argued, inasmuch as the release extinguished Claudy's claims against all "parties" and that Jones was a party, his liability was in fact terminated. Jones replied that he was not required to raise his defenses to the contribution action at the hearing on the *bona fides* of the settlement, claiming that his argument as to whether or not his liability was extinguished by the release went to the settlement agreement as it applied to him, and not to the agreement itself or the parties' right to contract as they deemed appropriate.

On December 10, 1990, the trial court held that Jones was not released by the settlement agreement, that the City had no right of contribution to assign to Claudy, and that therefore the assignment was a nullity. The court also rejected the City's argument that the court did not have jurisdiction. The court reasoned, "[i]t is not the 'good faith finding' that is at issue, but rather whether a cause of action exists. Clearly, the court has jurisdiction on this issue."

However, Claudy filed a timely motion to reconsider in which she maintained that the release discharged all "parties" to the litigation and that Larry Jones, individually and d/b/a AAA Tree Service, and Edison were the only other parties to the litigation. In addition, Claudy referred to the following provision in the original agreement:

> "If after the date of this Agreement, any provision of this Agreement is held to be illegal, invalid or not enforceable under the present or future laws effective during the terms of this Agreement such provisions shall be fully severable and in lieu thereof a provision as similar in terms to such illegal, invalid or not enforceable provision, as may be possible, shall be added to this Agreement[ ]"

and pursuant to this provision, she indicated to the court that the original agreement had been amended after it had been invalidated by the court to provide as follows:

> "CLAUDY hereby fully and forever discharges, releases, acquits and discharges [*sic*] the RELEASEES, and further for-

ever releases, acquits and discharges COMMONWEALTH EDI-SON, LARRY JONES, Individually and d/b/a AAA TREE SERVICE."

Jones responded that the amendment, by its own terms, did not apply; that it was invalid because it was amended *ex parte*; that it was void for lack of consideration; and that Claudy and the City were attempting to correct a mistake of law for which the law affords no remedy. Jones also renewed his previous arguments with respect to the original release.

On March 5, 1991, the court vacated its order of December 10, 1990, and entered one in which it determined that the ambiguity in the original release had been resolved by the amendment which specifically named Jones as a party intended to be discharged; and although it reaffirmed its finding of a good-faith settlement, the court found, nevertheless, that the assignment violated "the public policy propounded by the legislature in the Contribution Act," which the court felt "was designed to apportion damages among tortfeasors based upon relative degree of culpability, not to increase the total damages available to plaintiff."

Claudy appeals from the court's order dated March 5, 1991, and Jones cross-appeals from the court's orders entered on December 10, 1990, and March 5, 1991. Claudy does not raise as an issue on appeal her argument, rejected by the trial court, that it had no jurisdiction to entertain Jones' objections to the release and assignment as being untimely.

Because the issues presented herein are immensely important public policy questions, we invited *sua sponte* the Illinois Association of Defense Trial Counsel and the Illinois Trial Lawyers Association to file briefs as *amici* and to participate in oral argument. (134 Ill. 2d R. 345.) We are deeply appreciative of the assistance of both organizations and their counsel.

# I

It is well established that a cause of action for personal injuries is not assignable (*North Chicago Street R.R. Co. v. Ackley* (1897), 171 Ill. 100, 105, 49 N.E. 222, 225; *Town & Country Bank v. Country Mutual Insurance Co.* (1984), 121 Ill. App. 3d 216, 218, 459 N.E.2d 639, 640); and the reasons usually given for the rule are that: "(1) [a] litigious person could harass and annoy others if allowed to purchase claims for pain and suffering and pursue the claims in court as assignees; and (2) all assignments are void unless the assignor has either actually or potentially the thing which he attempts to assign." *Town &*

*Country Bank*, 121 Ill. App. 3d at 218, 459 N.E.2d at 640, citing *Ackley*, 171 Ill. at 111, 49 N.E. at 226.

Claudy argues that the contribution action has "none of the hallmarks of a claim for personal injuries," but rather, that it is "a claim for pecuniary loss" to the City which was damaged by paying more than its *pro rata* share of liability. According to Claudy, the contribution action is "predicated *** upon the business dealings between the City of Sycamore and Larry Jones" and is therefore assignable as in *Daugherty v. Blaase* (1989), 191 Ill. App. 3d 496, 548 N.E.2d 130, where the court upheld an insured's assignment to the insurer of a claim for his broker's malpractice based in part upon the business relationship between the broker and his client.

Jones maintains that the right of contribution is personal "in the sense that it relates only to the relationships and liability between joint tortfeasors." He contends that plaintiffs have no interest in the allocation of loss since they are entitled to collect against one or all of the tortfeasors. (Ill. Rev. Stat. 1979, ch. 70, par. 304.) That a tortfeasor is not absolutely protected against paying more than his *pro rata* share of liability if another tortfeasor is unable to pay (Ill. Rev. Stat. 1979, ch. 70, par. 303), Jones argues, is also indicative of the personal nature of the action. He advances the proposition that a cause of action which itself arises out of a personal injury action should not be assignable for the very reasons which prohibit the assignment of a personal injury action.

Jones relies on the authority of *Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 557 N.E.2d 873, in which he claims the court "recognized that a cause of action for contribution was intimately related to the [p]laintiff's claim for damages, which [was] *** the result of personal injury" and "rejected arguments that a contribution claim was not an action to recover for damages sustained by the original [p]laintiff." In *Hayes*, the plaintiffs asserted that their third-party actions for contribution against the defendants were "not for recovery of the damages sustained by the original plaintiff, but instead [were] actions seeking the enforcement of an equitable duty to share liability among the parties responsible for the original plaintiff's injury in proportion to their relative fault." (*Hayes*, 136 Ill. 2d at 456, 557 N.E.2d at 876.) The court reasoned:

> "The action for contribution apportions the damages among the parties responsible for the original plaintiff's injury, and the contributor is obligated for the damages directly created by the contributor's negligent actions. The third-party plaintiff, therefore, is seeking from the third-party defendant those damages

proximately caused by the negligent acts of the third-party defendant which the third-party plaintiff may be obligated to pay in the underlying suit." *Hayes*, 136 Ill. 2d at 457, 557 N.E.2d at 876.

■ Although the court in *Hayes* found that a cause of action for contribution is predicated upon the underlying tort action for purposes of the medical malpractice period of repose, we do not agree that such a finding requires the conclusion that an action for contribution is personal in nature for purposes of assignment. We note that in reaching its decision, the *Hayes* court acknowledged that "an action for contribution need not be predicated on the same theory of recovery as asserted by the plaintiff in the underlying action. (See, *e.g.*, *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 450[, 524 N.E.2d 586, 589]; *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 451-52[, 516 N.E.2d 266, 267]; *Doyle [v. Rhodes* (1984)], 101 Ill. 2d [1,] 14[, 461 N.E.2d 382, 390].)" (*Hayes*, 136 Ill. 2d at 457, 557 N.E.2d at 876.) Further, "[t]he intent underlying the passage of the Contribution Act is to create a separate right of restitution in the party seeking contribution, which right is not dependent on any other rights the claimant may have with respect to the party from whom contribution is being sought." *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1023, 473 N.E.2d 421, 430-31, *aff'd* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022, citing Clark, Comment, *Comparative Contribution: The Legislative Enactment of the Skinner Doctrine*, 14 J. Marshall L. Rev. 173, 193 (1980); see also *Robarts v. Diaco* (Fla. Ct. App. 1991), 581 So. 2d 911, 915 (the "right of contribution is a right separate and apart from the tort, created by statute and, therefore, assignable"), *review denied sub nom. St. Joseph's Hospital, Inc. v. Robarts* (1991), 591 So. 2d 183.

Nor can we subscribe to Jones' argument that the assignment of a contribution action promotes litigation for the purposes of harassment. In *Puckett* (183 Ill. App. 3d 181, 539 N.E.2d 420), the plaintiff sued Empire Stove Company and his landlords in connection with injuries he received in a fire. The landlords filed a third-party complaint for contribution against International Telephone and Telegraph Company (ITT), the manufacturer of the gas valve alleged to have caused the fire. The plaintiff did not sue ITT. (*Puckett*, 183 Ill. App. 3d at 183-84, 539 N.E.2d at 422-24.) After the trial court directed a verdict in favor of ITT and against the landlords, the plaintiff entered into an agreement with the landlords whereby they assigned to him their cause of action for contribution against ITT in return for his promise

not to execute on his judgment in excess of an amount certain. On appeal, the plaintiff claimed that the trial court erred in directing a verdict in favor of ITT and against the landlords. (*Puckett*, 183 Ill. App. 3d at 190, 539 N.E.2d at 424.) ITT argued that the assignment was void as against public policy because it encouraged litigation which would otherwise not have been brought and thus constituted champerty or maintenance. The court noted that "[c]hamperty and maintenance have been disapproved by the courts as against public policy because a litigious person could harass and annoy others if allowed to purchase claims for pain and suffering and pursue the claims in court as an assignee." (*Puckett*, 183 Ill. App. 3d at 191, 539 N.E.2d at 427.) The court held, however, that the assignment did not violate any public policy of which it was aware because the plaintiff was not a stranger to the action between the landlords and ITT, and because he was not promoting the litigation of another which otherwise would not have been maintained. *Puckett*, 183 Ill. App. 3d at 190-91, 539 N.E.2d at 427.

Consequently, we encounter no impediment to our holding that the assignment of an action for contribution does not violate the rule barring the assignment of actions for personal injuries.

## II

The determination of whether a cause of action is assignable should also be based "upon the court's analysis of the nature of the claim sought to be assigned and upon an examination of the public policy considerations implicated, if the assignment of such claims was permitted." (*Christison v. Jones* (1980), 83 Ill. App. 3d 334, 337, 405 N.E.2d 8, 10, citing *Ackley*, 171 Ill. at 111-12, 49 N.E. at 227.) Claudy contends that the assignment of the contribution action furthers the goals of the Contribution Act. In response, Jones argues that the assignment not only violates the Contribution Act, but circumvents the strictures of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) and the Insurance Guaranty Fund act as well. Claudy characterizes Jones' arguments as "spurious."

### A. THE CONTRIBUTION ACT

The Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) provides in relevant part:

"§2. Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among

them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.

(f) Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution. This provision does not affect any right of contribution nor any right of subrogation arising from any other relationship." Ill. Rev. Stat. 1979, ch. 70, par. 302.

"There are two policies to be served by the [Contribution Act]: (1) the encouragement of settlements, and (2) the equitable sharing of damages." *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 94, 463 N.E.2d 792, 803, *appeal denied* (1984), 101 Ill. 2d 547, 467 N.E.2d 582.

Claudy contends that our courts, in order to foster the goals of the Act, "have continuously expanded the implementation of the Contribution Act" in cases such as *Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 524 N.E.2d 586, *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932, *appeal denied* (1988), 123 Ill. 2d 556, 535 N.E.2d 400, *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779, 527 N.E.2d 1022, and *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 498 N.E.2d 690.

For example, Claudy asserts that in *Doellman*, "the plaintiff was allowed to settle with one defendant and the plaintiff's employer which was a third-party defendant, notwithstanding that the remaining, nonsettling, defendant had filed a third-party action against plaintiff's employer prior to settlement." She further states that the plaintiffs in *Dixon* and *Ellis* were permitted to "settle directly" with the third-party defendants. And in *Hall*, Claudy points out that "the defendant/third-party plaintiff was permitted to settle with the plaintiff and then proceed to trial against the third-party defendant, plaintiff's employer, without initially extinguishing the Workmen's [*sic*] Compensation lien held by plaintiff's employer." The key to these decisions, argues Claudy, is that the court in each case determined that the settlement fulfilled the goals of the Act, that it was held to be reasonable, and that it was reached in good faith.

Specifically, in *Hall*, which she claims is "a mirror image of the present matter," Claudy observes that in rejecting the argument that Archer-Daniels-Midland (ADM) failed to present a *prima facie* case for contribution, the court found it evident that the settlement was effected in good faith, that it was reasonable, and that ADM paid more than its proportionate share of the common liability. She notes that the court found further that ADM's settling with the plaintiff and extinguishing the potential tort liability of the others, thus undertaking the collective liability of the parties subject only to whatever success it might later have in its contribution actions against the others, gave rise to a presumption of good faith. In addition, Claudy points out the *Hall* court's statement that whether ADM paid an amount in excess of its *pro rata* share of the common liability was the point decided by the jury in the trial of ADM's contribution claims. Claudy maintains that "[t]his same reasoning applies here."

She also emphasizes that the assignment confers upon her only the benefit of the contribution action and does not change its nature since she must prove the same elements the City would have to establish in such an action in order to be awarded contribution. Nor, she stresses, does the assignment affect Jones' defenses. Therefore, Claudy concludes, Jones is in the same position whether it is the City or Claudy who pursues the contribution claim against him.

Jones responds that "[t]he Contribution Act establishes a mechanism whereby a *'tortfeasor who has paid more than his pro rata share of the common liability'* can recover the excess monies from another tortfeasor who is subject to liability for the same injury." (Emphasis in original.) Therefore, Jones contends, the settlement at issue disregards the policy of equitable sharing of damages among tort-

feasors because it directs that the sums recovered under the Contribution Act "shall enure to Claudy," who is not a tortfeasor, and not to the City, which is a tortfeasor. He asserts further that "according to the [r]elease, the parties determined that the *total* common liability was $400,000." (Emphasis in original.) If the total common liability is $400,000, he posits, Claudy should not be entitled to recover an amount greater than $400,000. Jones points out that pursuant to section 2(e) of the Act, a tortfeasor who settles with a claimant is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement. Accordingly, Jones urges that "[i]f the common liability is not $400,000, but, a greater amount, then the [r]elease did not extinguish [his] liability" and that "[a] right of contribution exists *only* where the tortfeasor's liability has been extinguished." Therefore, he concludes, "there is nothing which could be assigned to [Claudy] and the assignment is a nullity."

Further, Jones denies that *Hall* is, "as asserted by Claudy, 'a mirror image of the present matter.'" He avers that in *Hall* "there was no question that the proceeds of the contribution action were maintained by the Third Party Plaintiff" and that therefore the plaintiff did not recover more than the settlement amount. Similarly, Jones contends that none of the plaintiffs in *Doellman, Dixon* or *Ellis* increased their recovery by a third-party action beyond the amount determined to be the collective liability.

■ Paramount in our consideration of the assignment at issue is that it promoted a settlement without inhibiting an equitable sharing of damages and that it was found to have been made in good faith, a finding which remains unaffected by any of the orders entered by the trial court herein. Although the terms of the Contribution Act provide that "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability" (Ill. Rev. Stat. 1979, ch. 70, par. 302(b)), the law relating to assignments provides that "[o]nce made, an assignment puts the assignee into the shoes of the assignor" (*Collins Co. v. Carboline Co.* (1988), 125 Ill. 2d 498, 512, 532 N.E.2d 834, 839), and that "[t]he assignee takes the assignor's interest subject to all legal and equitable defenses existing at the time of the assignment" (*Kelley/Lehr & Associates, Inc. v. O'Brien* (1990), 194 Ill. App. 3d 380, 389, 551 N.E.2d 419, 425). Therefore, although Claudy is not a tortfeasor, the assignment places her in the shoes of the City, which is one. Jones also overlooks that "the Contribution Act focuses, as it was intended to do, on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compen-

sate him for his loss." (*Doyle*, 101 Ill. 2d at 14, 461 N.E.2d at 390.) Jones further glosses over the fact that Claudy's release, the good faith of which has always subsisted in this case, did in fact extinguish the tort liability of all parties alleged to be tortfeasors; and what he fails to apprehend is that it is his *contribution* liability, and the *only* liability, that remains unresolved in this case.

Although there appears to be no Illinois authority on point (the parties here agree that this is a case of first impression in our jurisdiction), we find the case of *Robarts v. Diaco* (Fla. Ct. App. 1991), 581 So. 2d 911, 915, to be highly persuasive. There, Edna Robarts, as personal representative of her husband's estate, sued two doctors and a hospital, charging all of them with negligently causing his death. Subsequently, Robarts settled with the doctors for $250,000 and an assignment to her of any right of contribution the doctors may have had against the hospital. The settlement released all allegedly culpable parties from their tort liability. (*Robarts*, 581 So. 2d at 912-13.) The hospital moved to dismiss Robarts' action for contribution on the ground that she had received full compensation for the wrongful death as a result of the settlement agreement and that any additional recovery by means of the assignment would be in excess of full and fair compensation and therefore unconscionable. (*Robarts*, 581 So. 2d at 914.) The trial court found that the assignment was invalid and that it conveyed no actionable rights to Robarts. Therefore, it dismissed Robart's amended complaint with prejudice. *Robarts*, 581 So. 2d at 914-15.

In reversing the decision of the trial court, the appellate court held:

> "[T]he assignment of the doctors' rights of contribution in this case is not invalid merely because it was assigned to the original plaintiff in the tort action who may or may not have received full compensation for the injuries sustained by reason of the tort. If the assigning tortfeasor should choose to bestow a 'windfall' upon the plaintiff by reason of such an assignment, that is a matter of contract between those parties. Such a plaintiff may, by way of such an assignment, ultimately recover more than what his full compensation for damages resulting from the tort alone would have been. However, that plaintiff cannot, because of the limitations of section 768.31(2)(b) and (3), recover more from a nonsettling joint tortfeasor on the assignment than the assigning tortfeasor paid in excess of his pro rata share of liability for the tort. Neither can that plaintiff recover from a nonsettling joint tortfeasor more than that non-

settling joint tortfeasor's pro rata share of the reasonable value of the entire liability." *Robarts*, 581 So. 2d at 915.

Section 768.31(2)(b) of Florida's Contribution Among Joint Tortfeasors Act is virtually identical to our statute and provides as follows:

> "The right of contribution exists only in favor of a tortfeasor who had paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability." (Fla. Stat. Ann. §768.31 *et seq.* (West 1986).)

Therefore, as *Robarts* illustrates, Jones is in the same position regardless of whether it is the City or Claudy who pursues the contribution claim against him. Furthermore, instead of being prejudiced by the assignment, there is every reason to believe that it could inure to his benefit, for as the *Robarts* court suggests, Claudy "may or may not have received full compensation for the injuries sustained by reason of the tort," yet Jones' liability for contribution is still limited to a percentage of a permanently fixed amount, to which he has never objected and which the trial court approved.

Nevertheless, Jones still argues that if Claudy recovers more than the common liability, it must necessarily mean that his liability has not been extinguished. However, as stated in *Hall*:

> "The language and purpose of the Contribution Act indicate that a settling tortfeasor's right to contribution depends only on his elimination of another tortfeasor's tort liability or culpability; the Contribution Act does not require a settling party to eliminate every obligation, such as that for workers' compensation benefits, that the contribution defendant may have to the injured plaintiff." *Hall*, 122 Ill. 2d at 454, 524 N.E.2d at 589.

In this case we find it necessary to reiterate that it is clear that the settlement extinguished the tort liability of all of the tortfeasors, including Jones, and established the common *tort* liability *immutably* at $400,000. However, the parties did not and were not required to extinguish Jones' liability for *contribution*. Therefore, that the City assigned to Claudy, as additional consideration, its right of contribution against Jones does not in any way mean that Jones' *tort* liability was not extinguished. It goes without saying that if, instead of assigning it to Claudy, the City had pursued its contribution action successfully against Jones, it surely would not have increased the "total common liability," whatever the amount of the recovery; it therefore becomes difficult to imagine how such liability would be augmented if

the contribution recovery were to be had by Claudy due to the City's assignment of the claim. Nor, for that matter, are we enlightened by Jones as to how he would be prejudiced if the City were to gift to Claudy a direct recovery in contribution instead of merely assigning to her its cause of action, for we perceive no impediment to a good-faith finding regarding such a settlement. There is no denying that such a settlement would be totally in keeping with the purposes of the Contribution Act, that is, the encouragement of settlements and the equitable sharing of damages.

Accordingly, we hold that the City's assignment of its claim for contribution in this case does not impinge upon any of the provisions of the Contribution Act.

### B. THE WORKERS' COMPENSATION ACT

Jones contends that the assignment also contravenes the public policy which motivates the Workers' Compensation Act. Section 5(a) of the Act provides in relevant part:

"No common law or statutory right to recover damages from the employer, his insurer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a).

The release in this case provides in relevant part:

"WHEREAS, CLAUDY does not presently have a cause of action against Larry Jones, Individually and d/b/a AAA Tree Service, since that action is barred by the Exclusive Remedy Provisions of the Workmen's [sic] Compensation Act.

Therefore, CLAUDY and RELEASEES are desirous of entering into an agreement to resolve their differences to wit:

RELEASEES shall:

(a) Pay the sum of Four Hundred Thousand ($400,000.00) Dollars in settlement of all claims of CLAUDY against the RELEASEES arising from the death of Keith Claudy;

(b) RELEASEES shall assign their cause of action pursuant to The Contribution Act against Larry Jones, Individually and d/b/a AAA Tree Service to CLAUDY and all sums recovered thereunder shall enure to CLAUDY."

According to Jones, the assignment "is nothing but a direct action against the decedent's employer in violation of the Worker's Compensation Act." (Flynn v. Rathnau (1990), 202 Ill. App. 3d 482, 559 N.E.2d 1102; Miranda v. Jewel Cos. (1989), 192 Ill. App. 3d 586, 548

N.E.2d 1348.) As previously noted, Claudy responds that because the nature of the action remains the same, any attempt by Jones to argue that the policy of the Workers' Compensation Act is implicated adversely by the assignment is "spurious."

■ Recently, in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 156, 585 N.E.2d 1023, 1024, our supreme court considered "whether an employer, sued as a third-party defendant in a product liability case, is liable in contribution in an amount greater than its statutory liability under the Workers' Compensation Act." In considering this issue, the court reviewed its earlier decision in *Doyle*, in which the employer contended that the requirement of the Contribution Act that both defendants be "subject to liability in tort" precluded the existence of a right to contribution where one of the defendants was liable to the plaintiff on a no-fault basis and enjoyed a special immunity from tort liability. *Doyle*, 101 Ill. 2d at 10, 461 N.E.2d at 386.

There the court reasoned:

"The language relied on by the employer is neither unambiguous nor should it be construed in the way the employer seeks to apply it. The Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort, but that defense is an affirmative one whose elements *** must be established by the employer, and which is waived if not asserted by him in the trial court. [Citations.] Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him [citation], and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury's satisfaction. The potential for tort liability exists until the defense is established." *Doyle*, 101 Ill. 2d at 10-11, 461 N.E.2d at 386-87.

Consequently, the court held that under the Contribution Act the employer's immunity from a suit in tort by its employee was not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff/employee. *Doyle*, 101 Ill. 2d at 14, 461 N.E.2d at 390.

In *Kotecki*, the court explained that *Doyle* did not "squarely answer the question as to the *amount* of contribution that an employer may be liable for under the Contribution Act," but rather, that it "stands for the proposition that a negligent employer *is liable* for contribution to a third party, regardless of the Workers' Compensation Act." (Emphasis in original.) (*Kotecki*, 146 Ill. 2d at 160, 585 N.E.2d

at 1025.) The court held that the Minnesota rule, which was established in *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 257 N.W.2d 679, provided the fairest and most equitable balance between the competing interests of the employer and the third-party defendant and that it was the accommodation foreshadowed in *Doyle.* It explained:

> "Limiting the amount of contribution of an employer to its liability under workers' compensation:
>
> > 'allows the third party to obtain limited contribution, but substantially preserves the employer's interest in not paying more than workers' compensation liability. While this approach may not allow full contribution recovery to the third party in all cases, it is the solution we consider most consistent with fairness and the various statutory schemes before us.' *Lambertson,* 312 Minn. at 140, 257 N.W.2d at 689.
>
> The language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits. These limited benefits are paid in exchange for a no-fault system of recovery. The Contribution Act, as this court held in *Doyle,* requires that the employers contribute to tort judgments if they are partially responsible for an employee's injuries." *Kotecki,* 146 Ill. 2d at 165, 585 N.E.2d at 1028.

Although after *Kotecki,* an employer's contribution liability clearly can be no greater than the amount of its statutory Workers' Compensation liability (see *Pavelich v. All American Homes, Inc.* (1992), 239 Ill. App. 3d 173, 606 N.E.2d 859, *appeal denied* (1993), 149 Ill. 2d 649), there is some debate as to whether *Kotecki* applies prospectively or retroactively (compare *Doran v. Corn Products—United States, a Division of CPC, International, Inc.* (N.D. Ill. 1991), 776 F. Supp. 368, 371 (*Kotecki* applied retroactively), citing *Kalp v. American National Can Co.* (N.D. Ill. May 17, 1991), No. 90 C 4910, and *Kocik v. Commonwealth Edison Co.* (1993), 242 Ill. App. 3d 679, 610 N.E.2d 766 (same), with *Norberg v. Centex Homes Corp.* (1993), 247 Ill. App. 3d 267, 273 (*Kotecki* applied prospectively)), we believe that it applies retroactively. (See Illinois Judicial Conference Annual Meeting, Civil Practice, at 15 (1991).) Applying the *Kotecki* framework to the instant case, Jones' insurer paid Claudy $102,876.09 in workers' compensation benefits, but Claudy eventually paid from the proceeds of her settlement with the City $77,157.06 plus interest for a total of $84,101.19 in full satisfaction of the workers' compensation lien. Therefore, Jones' lien is extinguished, and he remains potentially lia-

ble to Claudy, standing in the shoes of the City, in contribution for an amount up to, but not to exceed, his statutory workers' compensation liability.

In sum, it is clear that the City had a right of contribution against Jones. As to the assignment of this right, we reiterate that the trial court found that the settlement was made in good faith, a finding that remains undisturbed in this case. Further, we note that in *Puckett*, the court stated:

> "The intent of the contribution statute was to reach anyone who is culpable, regardless of whether they have been immunized from a direct tort action by some special defense or privilege. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1024, 473 N.E. 421, 430, *aff'd* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022.)" *Puckett*, 183 Ill. App. 3d at 192, 539 N.E.2d at 427.

We therefore hold that the assignment does not violate the Workers' Compensation Act.

### C. THE INSURANCE GUARANTY FUND ACT

Jones also charges that "[t]he assignment was devised in order to avoid the statutory limitation on recovery as set forth in the Illinois Insurance Guaranty Fund Act." Claudy responds that since the Fund issue relates to the collectibility of judgments rather than to the question of liability, the Fund will become a factor only if she is unable to collect from Jones. Claudy replies further that the Illinois Insurance Code (Guaranty Fund Act) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.82 *et seq.*) bars claims, not rights of action, and that therefore it does not affect her ability to proceed against Jones.

Jones was insured by American Mutual Insurance Company which, as we have noted above, paid Claudy $102,876.09 in workers' compensation benefits. The court granted American Mutual's petition to intervene in order that it might protect its right to reimbursement for those benefits. Subsequently, American Mutual was put into liquidation and the Illinois Insurance Guaranty Fund assumed Jones' defense in this case. As noted above, Claudy eventually paid $77,157.06 plus interest for a total of $84,101.19 in full satisfaction of the workers' compensation lien. The limits of coverage of the policy were $100,000.

"The intention of the legislature in establishing the Illinois Guaranty Fund was to protect the public from losses arising from the insolvency of Illinois Insurers. [Citation.]" (*Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 239, 367 N.E.2d 469, 470;

accord *Norberg*, 247 Ill. App. 3d at 274; Ill. Rev. Stat. 1989, ch. 73, par. 1065.82.) Any insurance company which holds a certificate of authority to transact any kind of insurance in the State is a member. (*Adams v. Illinois Insurance Guaranty Fund* (1980), 85 Ill. App. 3d 867, 868, 407 N.E.2d 638; Ill. Rev. Stat. 1989, ch. 73, par. 1065.84—5.) "The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent." (*Lucas*, 52 Ill. App. 3d at 239, 367 N.E.2d at 471; Ill. Rev. Stat. 1989, ch. 73, par. 1065.82.) The Fund is "not a collateral or independent source of recovery; rather, it is a substitution when the expected coverage ceases to exist." (*Lucas*, 52 Ill. App. 3d at 240, 367 N.E.2d at 471.) Further, the Fund was not intended to pay all judgments, but only "covered claims." *Nianick v. Edgewater Beach Hotel* (1975), 28 Ill. App. 3d 33, 35, 328 N.E.2d at 82, 84.

Specifically, Jones argues that the assignment was intended to avoid the limitation of the Guaranty Fund Act's "covered claim" provision. A "covered claim" does not include:

"(v) any claim for any amount due any reinsurer, insurer, insurance pool, or underwriting association as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise. No such claim held by a reinsurer, insurer, insurance pool, or underwriting association may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund obligation limitations set forth in Section 537.2 of this Code." Ill. Rev. Stat. 1989, ch. 73, par. 1065.84—3(b)(v).

Accordingly, Jones argues that, pursuant to the provisions of the Guaranty Fund Act, the City is prohibited from asserting its claim for contribution against him and therefore it had nothing to assign. In addition, Jones argues that the Guaranty Fund Act's "non-duplication of recovery" provision precludes Claudy from further recovery. The provision states:

"(a) Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." Ill. Rev. Stat. 1989, ch. 73, par. 1065.96(a).

Jones relies on the authority of *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 520 N.E.2d 743, in support of his position. There, this court stated:

"It is clear that the legislature did not want the assets of the Fund depleted to reimburse solvent insurance companies for payments made to claimants or their insured under policies for which they received a premium. It is also clear that the legislature intended to protect individual insureds of the insolvent company from claims for reimbursement by the solvent insured. Therefore, it would counteract the purposes of the Fund to allow a solvent insurer to be reimbursed by proceeds from the Fund." *Pierre*, 165 Ill. App. 3d at 761, 520 N.E.2d at 744.

■ Regarding the "covered claim" provision of the Guaranty Fund Act, we note again that the assignment puts Claudy into the shoes of the City, which is clearly not a "reinsurer, insurer, insurance pool or underwriting association." (Ill. Rev. Stat. 1985, ch. 73, par. 1065.84—3(b)(ii).) Nothing in the Insurance Guaranty Fund Act prevents the City, and therefore Claudy, from presenting a claim against the Fund. Nor is there anything in the record to suggest that anyone but the City would be the claimant against the Fund, a claim the City has assigned to Claudy. *Pierre* makes it clear that the protections of the Guaranty Fund Act do not extend beyond the amount of the employer's lien or, in any case, the limits of the coverage of the policy issued by his insurer. In *Pierre* there was a worker's compensation lien in the amount of $6,983.56 on the plaintiff's judgment of $6,141.60. Because of the lien, the entire judgment against the defendant was obviously an amount due an insurer as subrogated recovery or otherwise. Therefore, the plaintiff was not only precluded from recovering the judgment against the Fund but also from the insured defendant because it was the "person insured" under a policy issued by an insolvent company. *Pierre*, 165 Ill. App. 3d at 761, 520 N.E.2d at 744.

However, this court also stated in *Pierre*:

"[I]f the judgment against the defendant exceeded the amount of the worker's compensation lien of $6,983.56, the plaintiff would be entitled to recover the excess from the defendant or the Fund. For example, if the judgment against the defendant was $50,000 and the worker's compensation lien was $7,000, section 534.3(b)(ii) would only preclude the plaintiff or the worker's compensation insurer from asserting any claim for the first $7,000 of the judgment since that amount would be an 'amount due an insurer' under the statute. (Ill. Rev. Stat. 1985, ch. 73, par. 1065.84—3.) The plaintiff (the injured worker) would be entitled to recover the balance from the defendant or the Fund. In addition, although the Illinois Insurance Guaranty

Fund act does not prohibit any insurer from recovering any benefits from the defendant insured by an insolvent company or from the Guaranty Fund, the subrogating insurer still has the same rights against the estate of the insolvent insurer as it would have without the Guaranty Fund act." *Pierre*, 165 Ill. App. 3d at 761, 520 N.E.2d at 745.

Moreover, regarding the "non-duplication of recovery" provision, Jones has failed utterly to demonstrate its relevance to this case. In any event, in *Urban v. Loham* (1992), 227 Ill. App. 3d 772, 778, 592 N.E.2d 292, 296, the court rejected the defendants' argument that the exhaustion requirement of this provision was a statutory condition precedent for maintaining an action against them. The court stated:

"In *Herriford v. Boyles* (1990), 193 Ill. App. 3d 94, 550 N.E.2d 654, this court distinguished a plaintiff's claim against the Fund from a plaintiff's lawsuit against a tortfeasor. We noted that an insurance company, or the Fund in the case of an insolvent insurer, is not liable as the tortious wrongdoer. Rather, the insurer or the Fund merely stands ready, pursuant to the policy, to indemnify the tortfeasor for a loss. The claim against the Fund represents the amount the Fund must pay to the extent that it stands in the position of indemnifier. Section 546(a) only requires that a plaintiff must first recover any amount available under his own insurance policy before he can recover from the Fund. *Herriford*, 193 Ill. App. 3d at 952-53, 550 N.E.2d at 658.

However, the guaranty insurance fund statute does not contemplate an action directly against the Fund itself to determine a plaintiff's damages. Rather, a plaintiff's damages are determined as a collateral matter or in other proceedings. Thus, the *Herriford* court concluded that '[s]ection 546(a) is only relevant in determining the recovery from the Fund.' (*Herriford*, 193 Ill. App. 3d at 952-53, 550 N.E.2d at 658.)" *Urban*, 227 Ill. App. 3d at 778, 592 N.E.2d at 296.

The *Urban* court continued:

"As Justice Barry reasoned in his partial concurrence:

'By statute, plaintiffs here were required to first "exhaust" their rights under [their uninsured motorist coverage]. [Citation.] But, the statute also anticipates that the injured parties will be in no worse position by virtue of the defendants' insurer's insolvency than they would have been had the insurer been solvent. Ergo, if plaintiffs injured by liable parties whose insurers are solvent are entitled to present their

case to a jury for a determination of damages, then it would be an injustice incompatible with the statutory scheme to find that the plaintiffs here should be denied an opportunity to litigate their damages in a court action.' *Herriford,* 193 Ill. App. 3d at 960, 550 N.E.2d at 963 (Barry, J., concurring in part and dissenting in part)." *Urban,* 227 Ill. App. 3d at 778, 592 N.E.2d at 296.

Accordingly, we conclude that the Fund's "covered claim" and "non-duplication of recovery" provisions do not bar the City, and therefore Claudy, from asserting a contribution action against Jones.

For all of the above-stated reasons, we hold that the City's action for contribution against Jones is assignable and that the assignment does not violate either the Contribution Act, the Workers' Compensation Act or the Illinois Insurance Guaranty Fund.

### III

■ Finally, Jones contends in his cross-appeal that (1) even assuming the amendment provision in the original agreement was valid, according to its own terms it was not applicable in this case; (2) that the amendment was void for lack of consideration; (3) that the contracting parties made a mistake of law for which the law affords no remedy; and (4) that the attempt to modify the release constituted a material change. Although Jones is aware of the rule that only a party to a contract or one in privity to such party may sue to enforce a contract (*Dale v. Groebe & Co.* (1981), 103 Ill. App. 3d 649, 653, 431 N.E.2d 1107, 1111), he argues that he is not seeking to enforce the contract; rather, he asserts that he is able to allege a direct injury to his rights (*White Hen Pantry, Inc. v. Rak Woo Cha* (1991), 214 Ill. App. 3d 627, 635, 574 N.E.2d 104, 109; *Chicago Park District v. City of Chicago* (1984), 127 Ill. App. 3d 215, 218-19, 468 N.E.2d 1261, 1263, *aff'd* (1986), 111 Ill. 2d 7, 488 N.E.2d 968), and that the injury resulting from the modification of the release is clear because without the modification, Claudy could not bring the contribution action against him.

Claudy responds that: (1) the amended release specifically names Jones as one of the parties being released; (2) the true intention of the parties had always been to release Jones and the amendment fulfills that intention and is therefore proper; (3) the original release and the amended release are not substantially different and the amendment was anticipated by the original release; (4) Jones was not a party to the contract and thus has no standing to contest the amendment to the release; and (5) the court determined the intent of the

parties and the meaning of the release after considering parol evidence. Jones replies that it is clear that Claudy and the City were attempting to reform the release, but that they did not plead a cause of action for reformation, and he denies that the court considered parol evidence.

"A plaintiff has standing where he has a real interest in the subject matter of the controversy. [Citation.] The plaintiff must allege a direct injury to his rights and not merely that he will suffer in some indefinite way. [Citation.]" (*Chicago Park District v. City of Chicago* (1984), 127 Ill. App. 3d 215, 218, 468 N.E.2d at 1263.) However, "only a party to the contract or those in privity with him may sue on the contract [citation], except that a third-party beneficiary may sue on a contract made for his benefit. [Citations.]" (*White Hen Pantry, Inc.*, 214 Ill. App. 3d at 635, 574 N.E.2d at 109.) Although Jones is not suing on the contract, "[i]t is generally said that one who is not a party to a contract cannot complain that it is not mutual in character." (*Illinois Commerce Comm'n v. Central Illinois Public Service Co.* (1975), 25 Ill. App. 3d 79, 81, 322 N.E.2d 520, 522, citing 17 C.J.S. *Contracts* §100(1)(b), at 796 (1963).) Further, Jones does not claim that he is in privity with Claudy or the City or that he is a third-party beneficiary. Accordingly, we hold that Jones may not contest the validity of the amendment to the release.

Nevertheless, Jones contends on the authority of *Puckett* (183 Ill. App. 3d 181, 539 N.E.2d 420) that even if the modification were valid, the right to contribution was lost upon the execution of the first release and was incapable of being revived. As previously noted, in *Puckett*, the plaintiff sued Empire Stove Company and his landlords in connection with injuries he received in a fire. The landlords filed a third-party complaint for contribution against International Telephone and Telegraph Company (ITT), the manufacturer of the gas valve alleged to have caused the fire. The plaintiff did not sue ITT. (*Puckett*, 183 Ill. App. 3d at 183-84, 539 N.E.2d at 422-24.) After the trial court directed a verdict in favor of ITT and against the landlords, the plaintiff entered into an agreement with the landlords whereby they assigned to him their cause of action for contribution against ITT in return for his promise not to execute on his judgment in excess of an amount certain. On appeal, the plaintiff claimed that the trial court erred in directing a verdict in favor of ITT and against the landlords. (*Puckett*, 183 Ill. App. 3d at 190, 539 N.E.2d at 424.) ITT argued that because its tort liability was not extinguished by the agreement between the plaintiff and his landlords, the landlords had no right to recover contribution from it. Therefore, ITT concluded that the plaintiff

received nothing by the assignment and had no standing to prosecute the appeal. *Puckett*, 183 Ill. App. 3d at 192, 539 N.E.2d 428.

The court held that the agreement entered into between the plaintiff and his landlords was one "not to enforce judgment which did not extinguish ITT's liability, but was entered into for the express purpose of preserving ITT's liability," and "[t]herefore, upon execution of the agreement, [the landlords] lost their right to recover contribution from ITT." (*Puckett*, 183 Ill. App. 3d at 193, 539 N.E.2d at 428.) However, *Puckett* does not address the amendment of such a settlement agreement or whether the right to contribution can be revived. Consequently, *Puckett* is of no assistance to Jones as to this issue.

In *Rakowski v. Lucente* (1983), 120 Ill. App. 3d 715, 720, 458 N.E.2d 974, *aff'd* (1984), 104 Ill. 2d 317, 472 N.E.2d 791, the appellate court held that where the language of a release is clear and unambiguous, and it is executed with knowledge of its meaning, absent an express limitation on the face of the release itself, or clear and convincing evidence of fraud, mutual mistake or mental incompetence, the causes of action covered by the release are barred. According to the *Rakowski* court, neither a unilateral nor self-induced mistake is sufficient to invalidate a clear release. In this case, the trial judge found that the amendment cured the ambiguity in the original release. Accordingly, we discern no reason to hold that the amendment was improper.

For all of the foregoing reasons, we hold that the assignment was valid. We therefore affirm the judgment of the circuit court to the extent that it holds the amendment to have been proper. However, we reverse the circuit court's holding that the assignment violates the Contribution Act, and we remand this cause to the circuit court for further proceedings consistent with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded.

McCORMICK, P.J., and DiVITO, J., concur.