In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 04-4120, 04-4148

RELIANCE NATIONAL INSURANCE CO.,

*Plaintiff*,

*v.*

GREAT LAKES AVIATION, LTD., *et al.*,

*Defendants-Appellees*,

*v.*

ARNY BERGER, *et al.*,

*Defendants-Appellants*.

———————

Appeals from the United States District Court
for the Central District of Illinois.
No. 97 C 3289—**Richard Mills**, *Judge*.

———————

ARGUED SEPTEMBER 13, 2005—DECIDED NOVEMBER 23, 2005

———————

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. This case presents questions concerning the law of contribution among joint tortfeasors. The questions arise in a complex procedural setting; but we can simplify. In 1996, two airplanes, one carrying ten passengers, collided on a runway in a small municipal airport in Illinois. All fourteen persons aboard the two airplanes were killed. The two owners of the smaller plane

had a $1 million liability insurance policy that had been issued by Reliance National Insurance Company. Reliance filed an interpleader suit in federal district court, 28 U.S.C. § 1335, naming as defendants everyone who might have a claim to the insurance proceeds, including the owners of the smaller plane (all references to "owners" in this opinion are to them), the pilots (actually of course their estates, but we'll suppress that detail for the sake of simplicity), the passengers (that is, their estates), the manufacturer of both planes—Raytheon Aircraft Company—and the airline that operated the passenger plane, Great Lakes Aviation. Reliance deposited $1 million in the court and was dismissed. The eventual judgment in the interpleader suit, awarding the $1 million to Great Lakes and Raytheon, is challenged in this appeal, which is by the passengers.

The passengers had filed tort suits in an Illinois state court against Great Lakes, Raytheon, the owners, and the pilots. The two pilots of the smaller plane had filed similar suits against Great Lakes and the owners. The passengers settled with Great Lakes and Raytheon, receiving $44 million from the former and $8 million from the latter, for a total of $52 million. In exchange, the passengers released their claims against all the defendants, except that both they and the defendants "reserve[d] their respective rights, title and interest in their respective claims to the funds interpleaded by Reliance."

The pilots' state court suits went to trial in 2003, and on the eve of trial Great Lakes agreed with the owners that it would not seek any contribution from them personally; it would limit any claim of contribution to the $1 million that Reliance, the owners' liability insurer, had deposited in the federal district court in the interpleader suit. These parties further agreed that the amount of

contribution from the owners to which Great Lakes would be entitled would be determined by multiplying all amounts that Great Lakes had paid in settlement of the passengers' claims (that is, $44 million) by the percentage of responsibility for the collision that the jury in the pilots' suit allocated to the lead pilot of the smaller plane. That turned out to be 65 percent, implying a contribution claim for Great Lakes of $28.6 million ($44 million × .65). A similar agreement with Raytheon (though, oddly, it had not been named as a defendant) assessed its contribution claim as $5.2 million ($8 million [the amount of its settlement with the passengers] × .65). Great Lakes and Raytheon have agreed to divide the $1 million of insurance proceeds—if they are awarded those proceeds—in the same proportion as their claims. Their entitlements to contribution, calculated in accordance with their agreements with the owners, are much greater, but the sum they can actually receive is capped at the $1 million in the district court's registry.

Although the agreements were embodied in agreed judgment orders entered by the state court, the passengers claim to be entitled to the $1 million. The district judge rejected their claim. He thought that because Great Lakes and Raytheon apparently had been the only defendants in the passengers' suits to have paid anything—they had in fact paid the healthy sum of $52 million—the principles of equity entitled them to the modest contribution, $1 million, that they would receive if they were awarded the money that the owners' insurer had deposited in the district court. Alternatively he ruled that the agreed judgment orders in the state court gave Great Lakes and Raytheon a claim to the money that was prior to the passengers' claim. The passengers contend that those judgments are entitled to no weight because the passengers were not parties to the litigation in which the judgments were entered and because

an Illinois law bars contribution in the circumstances of this case. They further argue that as the only blameless parties (although actually Raytheon's liability has never been determined), they should get the $1 million.

The passengers are correct that contribution is barred by Illinois law. In words that could not be much clearer, the Illinois Joint Tortfeasor Contribution Act provides that "a tortfeasor who settles with a claimant . . . is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e). The purpose appears to be to discourage piecemeal settlement of multiparty cases, but in any event the rule is clear, and so, it seems to us, is its application to this case. The settling tortfeasors are Great Lakes and Raytheon, which together paid the "claimant" (the passengers) $52 million. The "tortfeasor[s] whose liability is not extinguished by the settlement" are the owners, provided the $1 million in the court's registry is attributed to them—but it should be, even though the deposit into the registry was made by their insurer. Suppose they hadn't been insured, and had deposited $1 million of their own money in the court. Their settlement with the passengers would not have extinguished their liability, but merely have limited it to the $1 million that they had deposited. It cannot make a difference that the money was actually deposited by their liability insurer, any more than it would have made a difference had it been deposited by a wire from their bank. The liability insurer is a surrogate for the tortfeasor whom it has insured. *Flatt v. Country Mutual Ins. Co.*, 682 N.E.2d 1228, 1232 (Ill. App. 1997); *Shelton v. Country Mutual Ins. Co.*, 515 N.E.2d 235, 240 (Ill. App. 1987); *Reagor v. Travelers Ins. Co.*, 415 N.E.2d 512, 514 (Ill. App. 1980).

This would be painfully obvious if the suit against the owners had gone to judgment and damages had been

assessed at $1 million and the owners had no personal assets, but just the insurance. Could Reliance have refused to pay the judgment on the ground that it was not the tortfeasor? Obviously not; and what difference can it make that instead of waiting for a judgment or settlement, Reliance deposited the proceeds with the court in order to minimize its own litigation expense? The interpleader procedure is not intended to alter substantive rights. *Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 200 (1934); *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988).

So "tortfeasor" in the Contribution Act cannot mean uninsured tortfeasor. What is true, however, and is easily confused with an attempt to reach the proceeds of a liability insurance policy, is that a plaintiff who has two claims against the defendant, one of which is *not* a tort claim or (as here) based on a tort claim, need not release that claim as well in order for the defendant to be able to obtain contribution from a joint tortfeasor. That is the holding of *Hall v. Archer-Daniels-Midland Co.*, 524 N.E.2d 586, 588-90 (Ill. 1988). (To the same effect see *Claudy v. Commonwealth Edison Co.*, 626 N.E.2d 1088, 1097 (Ill. App. 1993), reversed on other grounds, 660 N.E.2d 895 (Ill. 1995).) The plaintiff in *Hall* had a tort claim against some of the defendants and a workers' compensation claim against another defendant. The court held that a workers' compensation claim is not a tort claim within the meaning of the Contribution Act, so the claim, not having been "derived from negligent or otherwise culpable conduct," 524 N.E.2d at 589, didn't have to be released for contribution to be possible. But the passengers' claim to the money deposited in the district court derives entirely from the allegedly negligent conduct of Reliance's insureds; it thus is a tort claim—the passengers' tort claim against the owners. They have no contractual or other

right against the owners' insurer; they have not sued the insurer. They were sucked into the interpleader suit only because the insurer deposited in a federal district court assets available to satisfy a tort judgment against the insureds. The fact that Reliance deposited the proceeds of its liability insurance policy with the district court has no more significance than if it had deposited the money in an escrow account in a bank, or if the owners themselves, anticipating liability, had cashed a $1 million certificate of deposit.

So Great Lakes and Raytheon are barred from seeking the $1 million, but then what to do with it? The passengers' "clean hands" theory for why they're entitled to it and Great Lakes' and Raytheon's "we've suffered enough" theory are equally wide of the mark, though they gesture toward relevant considerations.

Remember that from the standpoint of liability the $1 million in the court's registry is the equivalent of $1 million in the owners' bank account. That money is owed to the passengers only if two conditions are satisfied: the owners are liable in tort to the passengers; and the amount the passengers have already received in settlement of their claims does not equal or exceed their legal entitlement. It is toward the first condition that the passengers gesture with their reference to "clean hands," and it is toward the second that Great Lakes and Raytheon gesture with their reference to the "equities." The passengers must prove that the owners were negligent, or otherwise tortiously culpable in some way for the accident, but they must also establish the amount of damages for which the owners are liable, given that the passengers have received money from other tortfeasors. "A tort victim can obtain only one recovery for his harm, no matter how many tortfeasors inflicted it." *Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987); see also *Zenith*

*Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971). So the owners, if found liable, can defend on the ground that, as Great Lakes and Raytheon contend without proof, the passengers have been fully compensated by the settlements.

So the case must be remanded to the district court for a determination of the owners' liability. The agreed judgment orders should play no role in that determination. They were not the result of an adjudication and the passengers were not parties to them. They are entitled to neither preclusive force nor evidentiary weight. *United States v. City of Chicago*, 870 F.2d 1256, 1260-62 (7th Cir. 1989); *LaSalle Bank National Ass'n v. Village of Bull Valley*, 826 N.E.2d 449, 456 (Ill. App. 2005).

To avoid, if possible, a further appeal, we consider finally who gets the $1 million if the passengers fail to establish the owners' liability. Great Lakes and Raytheon have no claim to it. Their only possible claim would be one based on a right of contribution, and the statute bars that. Logically the money should go back to Reliance if the passengers fail to establish the owners' liability to them, because in that event no one will have a superior claim to Reliance's claim. The money is, after all, Reliance's, which it deposited in court solely in order to avoid being dragged into the disputes between its insureds and their tort claimants. It is no longer the law that the interpleader plaintiff (Reliance) must have no stake in the proceeding. *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984); *Ashton v. Josephine Bay Paul & C. Michael Paul Foundation, Inc.*, 918 F.2d 1065, 1069 (2d Cir. 1990); 4 *Moore's Federal Practice* § 22.02[2] (3d ed. 2005).

We are told that Reliance is in bankruptcy. But presumably that just means that the trustee or the debtor in posses-

sion will enforce Reliance's claim. In the unlikely event that it is determined that Reliance abandoned the money, and no other claimant appears, the money will eventually escheat to the State of Illinois, the state in which the registry in which the money was deposited is located. 765 ILCS 1025/8.1; *In re Moneys Deposited in and Now under the Control of U.S. District Court*, 243 F.2d 443, 445 (3d Cir. 1957); see 28 U.S.C. § 2042.

The judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*